---

---

1  **GUTRIDE SAFIER LLP**
SETH A. SAFIER (State Bar No. 197427)
2  seth@gutridesafier.com
MARIE A. MCCRARY (State Bar No. 262670)
3  marie@gutridesafier.com
HAYLEY REYNOLDS (State Bar No. 306427)
4  hayley@gutridesafier.com
100 Pine Street, Suite 1250
5  San Francisco, CA 94111
Telephone: (415) 639-9090
6  Facsimile:  (415) 449-6469
7
8  Attorneys for Plaintiff
9        UNITED STATES DISTRICT COURT FOR THE
10           NORTHERN DISTRICT OF CALIFORNIA
11

MELISSA SANCHEZ, as an individual, on behalf of herself, the general public and those similarly situated,

CASE NO.

**CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; UNFAIR BUSINESS PRACTICES; AND UNJUST ENRICHMENT**

Plaintiff,

v.

NURTURE, INC.,

Defendant.

JURY TRIAL DEMANDED

**INTRODUCTION**

1.      Plaintiff Melissa Sanchez by and through her counsel, brings this class action against Defendant Nurture, Inc. d/b/a Happy Family to seek redress for Defendant's deceptive and unlawful practices in labeling and marketing the Happy Baby and Happy Tot brand baby and toddler food products.

2.      Parents are increasingly aware of the need to provide healthy food for their children, especially at the critical age of less than 2 years old. To make healthy food choices for their children, parents rely on nutritional information on food product labels.

3.      Intending to profit from parents' increasing desire to purchase healthy food for their young children, Defendant misbrands its baby and toddler food products by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"), and by misleading purchasers into believing that its products are healthier than other products for children under two years of age in order to induce parents into purchasing Defendant's products.

4.      Defendant's misbranding caused Plaintiff and members of the class to pay a price premium for the products.

**PARTIES**

5.      Melissa Sanchez is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Jose, California.

6.      Defendant Nurture, Inc. is a corporation existing under the laws of the State of Delaware, having its principal place of business in White Plains, New York.

**JURISDICTION AND VENUE**

7.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1332(d)(2). The aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs; and Plaintiff and at Defendant are citizens of different states.

8.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendant within, affecting, and emanating from, the State of California. Defendant regularly conducts and/or solicits business in, engages in other persistent

Class Action Complaint

courses of conduct in, and/or derives substantial revenue from products provided to persons in the State of California. Defendant has engaged, and continue to engage, in substantial and continuous business practices in the State of California.

9.      Venue is proper in this District pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred in the state of California, including within this District.

10.     In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, at various times throughout the class period, Ms. Sanchez purchased Happy Tot products in and around San Jose, California. Ms. Sanchez's declaration is attached hereto as Exhibit B.

11.     Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

**SUBSTANTIVE ALLEGATIONS**

12.     Defendant manufactures, distributes, markets, advertises, and sells a variety of baby and toddler food products under the brand names "Happy Baby" and "Happy Tot." Many of these products have packaging that predominately, uniformly, and consistently make nutrient content claims on the principal display panel of the product labels (the "Products"). A non-exhaustive list of the Products and the express and implied nutrient content claims made on the product packages is attached hereto as Exhibit A.

13.     The Products are intended for children under the age of two and Defendant markets the Products to parents of children under the age of two. FDA regulations explicitly prohibit certain nutrient content claims on foods intended for children under the age of two. 21 C.F.R. § 101.13(b)(3).

14.     Many of the Products are baby food "pouches." These pouches contain pureed baby food that were introduced to the market over a decade ago, and as of 2018, accounted for 25 percent of baby food sales in the United States.[1] An ever-growing industry, there is seemingly no limit to the combination of foods that can go into baby food pouches, as evidenced by the wide

---

[1] https://www.nytimes.com/2018/06/19/well/rethinking-baby-food-pouches.html

array of flavors of the Products. Looking for a way to differentiate itself in the growing market, Defendant has turned to making nutrient content claims on the front of its Products.

15.     For example, Defendant has a line of baby food pouches called "Happy Tot fiber and protein" that states on the front label "3g Protein" and "3g Fiber". The back of the pouch claims, "PROTEIN is a key building block for little growing bodies & FIBER helps support the digestive system! Here's to a happy & healthy start!". An exemplar is shown below.

 

16.     Another line of pouches called "Super Smart" state on the front label "20mg DHA" and "100mg choline". The back of the pouch claims, "Our inclusion of DHA & CHOLINE gives your tot important nutrients to help support a healthy brain. Here's to a happy & healthy start!". An exemplar is shown below.

 

17.     Another line of products is the Happy Tot bowls. The Happy Tots Organic Cheese & Spinach Ravioli bowl states on the front label "4g protein" and "Tots & Tykes 12+ months". The back of the label also claims "4g of protein". An exemplar of the front and back product labels of the Organic Cheese & Spinach Ravioli bowl is shown below.





18.     Another line of products called "Happy Tot Fiber & Protein Oat Bars" state on the front label "4g Fiber;" "2g protein;" "7g whole grains" and "Tots & Tykes". The back of the pouch claims, "Many tots don't get enough of this important nutrient each day". An exemplar of the front and back product labels is shown below.

Class Action Complaint

1

2

3

4

5

6

7

8

9

10

11

 

12      19.     Another line of products, the "Happy Tot Superfood Bars," state on the front label

13   "3g Fiber;" "350mg Omega-3 (ALA)" and "Tots & Tykes". The back of the pouch claims, "Many

14   tots don't get enough of this important nutrient each day". An exemplar of the front and back

15   product labels is shown below.

16

17

 

18

19

20

21

22

23

24

25

26      20.     Defendant markets other product lines which make similar express and implied

27   nutrient content claims as shown in Exhibit A.

28

21.     As described in detail below, Defendant's advertising and labeling of the Products with express and implied nutrient content claims is unlawful, misleading, deceptive, and intended to induce consumers to purchase the Products at a premium price. These claims deceive and mislead reasonable consumers into believing that the Products will provide more benefits than their competitors, and induce parents to purchase the Products despite a lack of evidence that an increased intake for the nutrients advertised are appropriate or recommended for infants and toddlers less than 2 years of age.

**Federal and State Regulations Governing Food Labeling**

22.     The Food and Drug Administration regulates nutrition content labeling. According to these regulations, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age," subject to certain exceptions not applicable here. 21 C.F.R. § 101.13(b)(3).

23.     According to the regulations, nutrient content claims can be expressed or implied. 21 C.F.R. § 101.13(b)(1), 21 C.F.R. § 101.13(b)(2).

24.     An express nutrient content claim is "any direct statement about the level (or range) of a nutrient in the food." 21 C.F.R. § 101.13(b)(1). Further, where information that is required or permitted to be "declared in nutrition labeling, and that appears as part of the nutrition label . . . is declared elsewhere on the label or in labeling, it is a nutrient content claim and is subject to the requirements for nutrient content claims." 21 C.F.R. § 101.13(c).

25.     An implied nutrient content claim "suggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient." 21 C.F.R. 1013(b)(2)(ii).

26.     Identical federal and California laws regulate the content of labels on packaged food and require truthful, accurate information on the labels of packaged foods. The requirements of the federal Food, Drug & Cosmetic Act ("FDCA"), and its labeling regulations, including those set forth in 21 C.F.R. § 101, were adopted by the California legislature in the Sherman Food Drug & Cosmetic Law (the "Sherman Law"). California Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant to the

federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."). The federal laws and regulations discussed herein are applicable nationwide to all sales of packaged food products. Additionally, no state imposes different requirements on labeling of packaged food for sale in the United States.

27.     Under the FDCA, the term "misleading" covers labels that are technically true, but are likely to deceive consumers. Under the FDCA, if any single representation on the labeling is misleading, the entire food is misbranded, and no other statement in the labeling can cure a misleading statement.

28.     Further in addition to its blanket adoption of federal labeling requirements, California has also enacted a number of laws and regulations that adopt and incorporate specific numerated federal food laws and regulations. *See* California Health & Safety Code § 110660 (misbranded if label is misleading).

29.     Under California law, a food product that is "misbranded" cannot legally be manufactured, advertised, distributed, sold, or possessed. Misbranded products have no economic value and are legally worthless.

30.     Representing that the Products will provide certain health benefits by making unlawful nutrient content claims as Defendant's labels do is prohibited by the aforementioned misbranding laws and regulations.

31.     The regulations relating to nutrient content claims discussed herein are intended to ensure that consumers are not misled as to the actual or relative levels of nutrients in food products.

**Defendant's Marketing and Labeling of the Products Violates State and Federal Food Labeling Laws**

32.     The Products are unlawful, misbranded, and violate the Sherman Law, California Health & Safety Code § 110660, *et seq.*, because the Products are intended for children less than 2 years of age and the Products' labels contain express and implied nutrient content claims.

33.     The Products at issue in this case are intended for children 6 months and up. Defendant markets the Products to parents of children under the age of 2.

34.     For example, according to Defendant's website, "only 30% of one-year old's eat veggies daily. Your little one can get a full serving in our pouches and bowls!"[2] Some of the foods, such as the Happy Baby Hearty Meals, are explicitly labeled for children under the age of 2 (i.e., 7+ months) and the Happy Tots bowls, which are labeled "Tots & Tykes 12+ months." Others, such as the "Happy Baby Greek Yogis" and "Happy Tots Creamies," are labeled for "Crawling baby," which typically occurs before a child is one years of age.

35.     Some of the Products, such as the "Happy Tot Fiber & Protein Bars" and "Happy Tot Superfoods Bars," are labeled as "tots & tykes," with no other indication of what age constitutes a "tot" or "tyke." However, the back of the packaging recommends that the child may be ready for the bars when he or she "stands with support" or "feeds self with fingers" or "bites through a variety of textures and foods" – which typically occurs before a child is two years of age. Additionally, when selecting the shopping filter  "12+ months" on Defendant's website, Defendant recommends "Happy Tot Fiber & Protein Bars" and "Happy Tot Superfoods Bars". Like many other parents, Plaintiff purchased the Products for her child when her child was approximately 12 months of age regardless of whether they were labeled for a 12-month-old or for a "tot."

36.     Further, all the Products are sold in the "Baby Food" grocery store aisles, alongside similar pureed pouch products and snacks marketed for a baby's first "finger foods." Defendant misbrands its Products by making nutrient content claims that are strictly prohibited by the FDA, and by misleading purchasers into believing that its products are healthier in order to induce parents into purchasing its products.

37.     All the Product labels contain impermissible express nutrient content claims. As shown in Exhibit A, the Product labels prominently state the grams of protein, grams of fiber, and/or milligrams of omega-3s on the front of the package. The grams of protein and fiber appear in the nutrition facts panel and are therefore nutrient content claims when stated elsewhere on the

---

[2] https://www.happyfamilyorganics.com/tot/

Class Action Complaint

label. 21 C.F.R. § 101.13(c). The statement of the presence of other nutrients are also express nutrient content claims.

38. Some of the Product labels also contain impermissible implied nutrient content claims or health claims. These claims are also outlined in Exhibit A. These claims use the word "healthy" in conjunction with explicit statements about nutrients in the Product. For example, the Happy Baby Happy Tot Organic Super Smart 4 oz Banana Mango Spinach w/ Coconut Milk packaging states "Our inclusion of DHA & Choline gives your tot important nutrients to help support a healthy brain. Here's to a happy & healthy start!" This statement is made in conjunction with the front label's explicit statement that the product contains "35mg beta-glucan."



39. As another example, the HappyTot Super Morning Organic Apples Cinnamon Yogurt & Oats with Superchia Baby Food Pouch packaging states "Omega-3s (ALA) from CHIA seeds help your toddler get the most out of every bite! Here's to a happy & healthy start!" This statement is made in combination with the front label that contains an explicit statement about the quantity of Omega-3: "680 mg Omeg-3 (ALA)."



40.     Foods intended for children less than two are prohibited from making such nutrient content claims. Therefore, the Products are accordingly misbranded.

41.     Defendant's marketing, advertising, and sale of the Products violates the false advertising provisions of the Sherman Law (California Health & Safety Code § 110390, *et. seq.*), including but not limited to:

    a.   Section 110390, which makes it unlawful to disseminate false or misleading food advertisements that include statements on products and product packaging or labeling or any other medium used to directly or indirectly induce the purchase of a food product;

    b.   Section 110395, which makes it unlawful to manufacture, sell, deliver, hold, or offer to sell any falsely or misleadingly advertised food; and

    c.   Sections 110398 and 110400, which make it unlawful to advertise misbranded food or to deliver or proffer for delivery any food that has been falsely or misleadingly advertised.

42.     Defendant's marketing, advertising, and sale of the Products violates the misbranding provisions of the Sherman Law (California Health & Safety Code § 110660, *et. seq.*), including but not limited to:

    a.   Section 110665 (a food is misbranded if its labeling does not conform with the requirements for nutrition labeling as set forth in 21 U.S.C. Sec. 343(q));

    b.   Section 110760, which makes it unlawful for any person to manufacture, sell, deliver, hold, or offer for sale any food that is misbranded;

    c.   Section 110765, which makes it unlawful for any person to misbrand any food; and

    d.   Section 110770, which makes it unlawful for any person to receive in commerce any food that is misbranded or to deliver or proffer for delivery any such food.

43.     Defendant has violated 21 U.S.C. § 343(a), and the standards set by FDA regulations, including but not limited to 21 C.F.R. §§ 101.13(b), 101.13(c), which have been

incorporated by reference in the Sherman Law, by including impermissible nutrient content claims on the labels of foods intended for children less than 2 years of age.

44.     A reasonable consumer would rely on the label claims to purchase the product. For example, a reasonable consumer would believe that because Defendant labeled its Products as containing certain nutrients and as being nutritious, that the Products were superior to other similar products that do not make the impermissible claims. A reasonable consumer would also believe that the Product label's inclusion of the nutrient content claims means that an increased intake of those nutrients would be beneficial for his or her child.

45.     Defendant intends for and knows that consumers will and do rely upon food labeling statements in making their purchasing decisions. Label claims and other forms of advertising and marketing drive product sales, particularly if placed prominently on the front of product packaging, as Defendant has done on the Product labels.

46.     Because consumers pay a price premium for Products that have a nutrient content claim on the front of the product packaging, by labeling its Products as providing nutritional value, Defendant is able to both increase its sales and retain more profits.

47.     Defendant is engaged in the practices complained of herein to further its private interests of: (i) increasing the sales of its Products while decreasing the sales of competitors' products that do not make unlawful nutrient content claims, and/or (ii) commanding a higher price for its Products because consumers will pay more for the Products due to consumers' demand for healthful products for their children.

48.     The market for baby food products continues to grow, and because Defendant knows consumers rely on the nutrient content claims on the Product labels, Defendant has an incentive to continue to make such misleading and unlawful representations.

49.     Defendant continues to launch new product lines with nutrient content claims to maintain its competitive edge, making it likely that Defendant will continue to misleadingly advertise its Products.

### PLAINTIFF'S EXPERIENCE

**Melissa Sanchez**

50.     Ms. Sanchez purchased several Happy Tot baby food pouches for her child start-ing when they were approximately 20 months of age, including each of the following varieties: Happy Tot Morning Baby Food Pouch Organic Blend - Banana, Blueberry, Yogurt, & Oats; Happy Tot Super Smart Baby Food Pouch - Banana, Mango, Spinach with Coconut Milk; Happy Tot Super Bellies Baby Food Pouch - Bananas, Carrots & Strawberries; Happy Tot Su-per Morning Baby Food Pouch - Apples, Cinnamon Yogurt & Oats with Superchia; Happy Tot Super Morning Baby Food Pouch - Bananas, Dragonfruit, Coconut Milk & Oats; Happy Baby Strawberry & Beet Superfood Puffs. Ms. Sanchez purchased the products from Buy Buy Baby and Target in San Jose, California.

51.     Ms. Sanchez made each of her purchases after reading the nutrient content claims on the product labels, including, for example, "2g Fiber," and "600mg Omega-3 ALA" on the front label of the Happy Tot Morning Baby Food Pouch Organic Blend - Banana, Blueberry, Yogurt, & Oats  food pouch. She purchased the Products instead of other products, because she believed the Products to be superior in providing nutrition for her child.

52.     As a result of Defendant's unlawful nutrient content claims, the Products have no, or at a minimum, a much lower value to Ms. Sanchez.

53.     Ms. Sanchez not only purchased the Products because the labels contained nutrient content claims, but she also paid more money for the Products than she would have paid if the Products did not contain nutrient content claims.

54.     Had Defendant not unlawfully and misleadingly labeled its Products, Ms. Sanchez would not have purchased them or, at a very minimum, she would have paid less for the Products.

55.     Ms. Sanchez continues to desire to purchase baby and toddler food products, including those marketed and sold by Defendant. If the Products did not contain unlawful and misleading labels, Plaintiff would likely purchase the Products again in the future. Ms. Sanchez regularly visits stores where the Products and other baby and toddler food products are sold.

56.     Plaintiff and members of the Class have been economically damaged by their purchase of the Products because the advertising for the Products was and is misleading under California law and the products are misbranded; therefore, the Products are worth less than what

Plaintiff and members of the Class paid for them.

## **CLASS ALLEGATIONS**

57.     Plaintiff brings this class action lawsuit on behalf of herself and a proposed class of similarly situated persons, pursuant to Rule 23(b)(2) and (b)(3) of the Federal Rules of Civil Procedure. Plaintiff seeks to represent the following group of similarly situated persons, defined as follows:

> The Class: All persons in the State of California who purchased the Products between November 3, 2017 and the present.

58.     This action has been brought and may properly be maintained as a class action against Defendant because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

59.     Numerosity: Plaintiff does not know the exact size the Class, but estimates that it is composed of more than 100 persons. The persons in the Class are so numerous that the joinder of all such persons is impracticable and the disposition of their claims in a class action rather than in individual actions will benefit the parties and the courts.

60.     Common Questions Predominate: This action involves common questions of law and fact to the Class because each class member's claim derives from the deceptive, unlawful and/or unfair statements and omissions that led them to rely on the unlawful nutrient content claims on the Product labels. The common questions of law and fact predominate over individual questions, as proof of a common or single set of facts will establish the right of each member of the Class to recover. The questions of law and fact common to the Class are:

   a.   Whether the marketing, advertising, packaging, labeling, and other promotional materials for the Products are deceptive and/or unlawful;

   b.   Whether Defendant's actions violate Federal and California laws invoked herein;

   c.   Whether labeling the Products with unlawful nutrient content claims causes the Products to command a price premium in the market as compared with similar products that do not make such unlawful claims;

   d.   Whether Defendant's advertising and marketing regarding the Products was likely

to deceive reasonable consumers;

    e.   Whether representations regarding the nutrient content of the Products are material to a reasonable consumer;

    f.   Whether Defendant engaged in the behavior knowingly, recklessly, or negligently;

    g.   The amount of profits and revenues earned by Defendant as a result of the conduct;

    h.   Whether class members are entitled to restitution, injunctive and other equitable relief and, if so, what is the nature (and amount) of such relief; and

    i.   Whether class members are entitled to payment of actual, incidental, consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the nature of such relief.

61.    Typicality: Plaintiff's claims are typical of the claims of the other members of the Class because, among other things, all such claims arise out of the same wrongful course of conduct engaged in by Defendant in violation of law as complained of herein. Further, the damages of each member of the Class were caused directly by Defendant's wrongful conduct in violation of the law as alleged herein.

62.    Adequacy of Representation: Plaintiff will fairly and adequately protect the interests of all class members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains. Plaintiff also has no interests that are in conflict with, or antagonistic to, the interests of class members. Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and that of the class. By prevailing on her own claims, Plaintiff will establish Defendant's liability to all class members. Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

63.    Superiority: There is no plain, speedy, or adequate remedy other than by

maintenance of this class action. The prosecution of individual remedies by members of the classes will tend to establish inconsistent standards of conduct for Defendant and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions would engender. Furthermore, as the damages suffered by each individual member of the classes may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

64.     Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

Plaintiff does not plead, and hereby disclaims, causes of action under the FDCA and regulations promulgated thereunder by the FDA. Plaintiff relies on the FDCA and FDA regulations only to the extent such laws and regulations have been separately enacted as state law or regulation or provide a predicate basis of liability under the state and common laws cited in the following causes of action.

### PLAINTIFF'S FIRST CAUSE OF ACTION

**(Violation of the Consumers Legal Remedies Act (the "CLRA"), California Civil Code § 1750, *et seq.*)**
**On Behalf of Plaintiff and the California Subclass**

65.     Plaintiff realleges and incorporate the paragraphs of this Class Action Complaint as if set forth herein.

66.     Defendant's actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

67.     Plaintiff and other subclass members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

Class Action Complaint

68.     The Products that Plaintiff (and other similarly situated subclass members) purchased from Defendant were "goods" within the meaning of California Civil Code § 1761(a).

69.     Defendant's acts and practices, set forth in this Class Action Complaint, led customers to falsely believe that the Products were superior to other products and would provide increased nutritional value for their babies. By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendant has violated, and continue to violate, § 1770(a)(2), § 1770(a)(5), § 1770(a)(7), and § 1770(a)(8) of the CLRA. In violation of California Civil Code §1770(a)(2), Defendant's acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the goods they sold. In violation of California Civil Code §1770(a)(5), Defendant's acts and practices constitute improper representations that the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have. In violation of California Civil Code §1770(a)(7), Defendant's acts and practices constitute improper representations that the goods it sells are of a particular standard, quality, or grade, when they are of another. In violation of California Civil Code §1770(a)(8), Defendant has disparaged the goods, services, or business of another by false or misleading representation of fact.

70.     Plaintiff requests that this Court enjoin Defendant from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2). If Defendant is not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the class will continue to suffer harm. Plaintiff and those similarly situated have no adequate remedy at law to stop Defendant's continuing practices.

71.     Plaintiff provided Defendant with notice and demand that Defendant correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein. Despite receiving the aforementioned notice and demand, Defendant failed to do so in that, among other things, they failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy, and/or to provide that remedy. Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and

1    restitution of any ill-gotten gains due to Defendant's acts and practices.

2        72.    Plaintiff also requests that this Court award their costs and reasonable attorneys'

3    fees pursuant to California Civil Code § 1780(d).

4                    **PLAINTIFF'S SECOND CAUSE OF ACTION**
                **(False Advertising, Business and Professions Code § 17500, *et seq.* ("FAL"))**

5                    **On Behalf of Plaintiff and the California Subclass**

6        73.    Plaintiff realleges and incorporates by reference the paragraphs of this Class

7    Action Complaint as if set forth herein.

8        74.    Beginning at an exact date unknown to Plaintiff, but within three (3) years

9    preceding the filing of the Class Action Complaint, Defendant made untrue, false, deceptive

10   and/or misleading statements in connection with the advertising and marketing of the Products.

11       75.    Defendant made representations and statements (by omission and commission)

12   that led reasonable customers to believe that the Products that they were purchasing were superior

13   to competitor products that did not contain unlawful nutrient content claims.  Defendant's

14   representations similarly led reasonable consumers to believe that the Product provided nutrients

15   at levels that would be beneficial for their children.

16       76.    Plaintiff and those similarly situated relied to their detriment on Defendant's

17   misleading and deceptive advertising and marketing practices, including each of the unlawful

18   claims set forth above. Had Plaintiff and those similarly situated been adequately informed and

19   not intentionally deceived by Defendant, they would have acted differently by, without limitation,

20   refraining from purchasing the Products or paying less for them.

21       77.    Defendant's acts and omissions are likely to deceive reasonable consumers and the

22   general public.

23       78.    Defendant engaged in these false, misleading and deceptive advertising and

24   marketing practices to increase its profits. Accordingly, Defendant has engaged in false

25   advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

26   Professions Code.

27       79.    The aforementioned practices, which Defendant used, and continue to use, to its

28   significant financial gain, also constitute unlawful competition and provide an unlawful

advantage over Defendant's competitors as well as injury to the general public.

80.    As a direct and proximate result of such actions, Plaintiff and the other subclass members have suffered, and continue to suffer, injury in fact and have lost money and/or property as a result of such false, deceptive and misleading advertising in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court. In particular, Plaintiff, and those similarly situated, paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's deceptive and misleading advertising. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

81.    Plaintiff seeks equitable relief, including restitution, with respect to her FAL claims. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiff makes the following allegations in this paragraph only as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action will not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy at law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the FAL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the FAL does not require individualize proof of deception or injury by absent class members. *See, e.g., Ries v. Ariz. Bevs. USA LLC,* 287 F.R.D. 523, 537 (N.D. Cal. 2012) ("restitutionary relief under the UCL and FAL 'is available without individualized proof of deception, reliance, and injury.'"). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the FAL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

82.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that

1   the above-described practices constitute false, misleading and deceptive advertising.

2          83.     Plaintiff seeks, on behalf of themselves and those similarly situated, an injunction

3   to prohibit Defendant from continuing to engage in the false, misleading and deceptive

4   advertising and marketing practices complained of herein. Such misconduct by Defendant, unless

5   and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the

6   general public and the loss of money and property in that Defendant will continue to violate the

7   laws of California, unless specifically ordered to comply with the same. This expectation of

8   future violations will require current and future consumers to repeatedly and continuously seek

9   legal redress in order to recover monies paid to Defendant to which it is not entitled. Plaintiff,

10  those similarly situated and/or other California consumers have no other adequate remedy at law

11  to ensure future compliance with the California Business and Professions Code alleged to have

12  been violated herein.

13                    **PLAINTIFF'S THIRD CAUSE OF ACTION**
                   **(Common Law Fraud, Deceit and/or Misrepresentation)**
14                      **On Behalf of Plaintiff and the Class**

15         84.     Plaintiff realleges and incorporates by reference the paragraphs of this Class

16  Action Complaint as if set forth herein.

17         85.     Defendant has fraudulently and deceptively included unlawful nutrient content

18  claims on the Product labels.

19         86.     The unlawfulness of the claims were known exclusively to, and actively concealed

20  by, Defendant, not reasonably known to Plaintiff, and material at the time they were made.

21  Defendant's unlawful statements concerned material facts that were essential to the analysis

22  undertaken by Plaintiff as to whether to purchase the Products. In misleading Plaintiff and not so

23  informing her, Defendant breached its duty to Plaintiff. Defendant also gained financially from,

24  and as a result of, its breach.

25         87.     Plaintiff and those similarly situated relied to their detriment on Defendant's

26  unlawful representations. Had Plaintiff and those similarly situated been adequately informed and

27  not intentionally deceived by Defendant, they would have acted differently by, without limitation:

28  (i) declining to purchase the Products, (ii) purchasing less of them, or (iii) paying less for the

Products.

88.     By and through such fraud, deceit, and unlawful representations, Defendant intended to induce Plaintiff and those similarly situated to alter their position to their detriment. Specifically, Defendant fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase the Products.

89.     Plaintiff and those similarly situated justifiably and reasonably relied on Defendant's unlawful representations, and, accordingly, were damaged by Defendant.

90.     As a direct and proximate result of Defendant's unlawful representations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Products.

91.     Defendant's conduct as described herein was wilful and malicious and was designed to maximize Defendant's profits even though Defendant knew that it would cause loss and harm to Plaintiff and those similarly situated.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
**(Unlawful, unfair, and fraudulent trade practices violation of Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Plaintiff and the California Subclass**

92.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

93.     Within four (4) years preceding the filing of this lawsuit, and at all times mentioned herein, Defendant has engaged, and continues to engage, in unlawful, unfair, and fraudulent trade practices in California by engaging in the conduct outlined in this Complaint.

94.     Defendant has engaged, and continue to engage, in unfair practices as described herein, in violation of the Unfair Competition Law, California Business & Professions Code §§ 17200 *et seq.* (the "UCL"), by, without limitation, including unlawful nutrient content claims on the Product labels and thereby selling Products that were not capable of being sold or held legally and which were legally worthless.

95.     Defendant has engaged, and continue to engage, in unlawful practices as described herein, in violation of the UCL, by, without limitation, violating the following laws:

1   (i) the CLRA as described herein; (ii) the FAL as described herein; (iii) the advertising provisions

2   of the Sherman Law (Article 3), including without limitation, California Health & Safety Code §§

3   110390, 110395, 110398 and 110400; (iv) the misbranded food provisions of the Sherman Law

4   (Article 6), including without limitation, California Health & Safety Code §§ 110665, 110760,

5   110765, and 110770; and (v) and federal laws regulating the advertising and branding of food in

6   21 U.S.C. § 343, *et seq.* and FDA regulations, including but not limited to 21 C.F.R. §§

7   101.13(b), which are incorporated into the Sherman Law (California Health & Safety Code §§

8   110100(a), 110380, and 110505).

9         96.     Defendant has engaged, and continues to engage, in fraudulent practices as

10  described herein, in violation of the UCL, by, without limitation, including unlawful nutrient

11  content claims on the Product labels and thereby selling Products that were not capable of being

12  sold or held legally and which were legally worthless.

13        97.     Plaintiff and those similarly situated relied to their detriment on Defendant's

14  unlawful, unfair, and fraudulent business practices. Had Plaintiff and those similarly situated been

15  adequately informed and not deceived by Defendant, they would have acted differently by,

16  without limitation: (i) declining to purchase the Products, (ii) purchasing less of the Products, or

17  (iii) paying less for the Products.

18        98.     Defendant's acts and omissions are likely to deceive the general public.

19        99.     Defendant engaged in these deceptive and unlawful practices to increase its

20  profits. Accordingly, Defendant has engaged in unlawful trade practices, as defined and

21  prohibited by section 17200, *et seq.* of the California Business and Professions Code.

22        100.    The aforementioned practices, which Defendant has used to its significant

23  financial gain, also constitute unlawful competition and provide an unlawful advantage over

24  Defendant's competitors as well as injury to the general public.

25        101.    As a direct and proximate result of such actions, Plaintiff and the other subclass

26  members, have suffered and continue to suffer injury in fact and have lost money and/or property

27  as a result of such deceptive and/or unlawful trade practices and unfair competition in an amount

28  which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

In particular, Plaintiff and those similarly situated paid a price premium for the Products, i.e., the difference between the price consumers paid for the Products and the price that they would have paid but for Defendant's misrepresentation. This premium can be determined by using econometric or statistical techniques such as hedonic regression or conjoint analysis. Alternatively, Plaintiff and those similarly situated will seek a full refund of the price paid upon proof that the sale of the Products was unlawful.

102. As a direct and proximate result of such actions, Defendant has enjoyed, and continues to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

103. Plaintiff seeks, on behalf of themselves and those similarly situated, equitable relief, including restitution for the premium and/or the full price that they and others paid to Defendant as result of Defendant's conduct. Plaintiff and the Class lack an adequate remedy at law to obtain such relief with respect to their "unfairness" claims in this UCL cause of action, because there is no cause of action at law for "unfair" conduct. Plaintiff and the Class similarly lack an adequate remedy at law to obtain such relief with respect to their "unlawfulness" claims in this UCL cause of action because the Sherman Law (Articles 3 and 6) and the Federal laws and regulations referenced herein do not provide a direct cause of action, so Plaintiff and the Class must allege those violations as predicate acts under the UCL to obtain relief.

104. Plaintiff also seeks equitable relief, including restitution, with respect to their UCL unlawfulness claims for violations of the CLRA, FAL and her UCL "fraudulent" claims. Pursuant to Federal Rule of Civil Procedure 8(d)(2), Plaintiff makes the following allegations in this paragraph only as an alternative to any contrary allegations in their other causes of action, in the event that such causes of action do not succeed. Plaintiff and the Class may be unable to obtain monetary, declaratory and/or injunctive relief directly under other causes of action and will lack an adequate remedy of law, if the Court requires them to show classwide reliance and materiality beyond the objective reasonable consumer standard applied under the UCL, because Plaintiff may not be able to establish each Class member's individualized understanding of Defendant's misleading representations as described in this Complaint, but the UCL does not

require individualized proof of deception or injury by absent class members. *See, e.g., Stearns v Ticketmaster*, 655 F.3d 1013, 1020, 1023-25 (distinguishing, for purposes of CLRA claim, among class members for whom website representations may have been materially deficient, but requiring certification of UCL claim for entire class). In addition, Plaintiff and the Class may be unable to obtain such relief under other causes of action and will lack an adequate remedy at law, if Plaintiff is unable to demonstrate the requisite *mens rea* (intent, reckless, and/or negligence), because the UCL imposes no such *mens rea* requirement and liability exists even if Defendant acted in good faith.

105.    Plaintiff seeks, on behalf of herself and those similarly situated, a declaration that the above-described trade practices are fraudulent, unfair, and/or unlawful.

106.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to prohibit Defendant from continuing to engage in the deceptive and/or unlawful trade practices complained of herein. Such misconduct by Defendant, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendant will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future consumers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendant to which they were not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

**PLAINTIFF'S FIFTH CAUSE OF ACTION**
**(Unjust Enrichment)**
**On Behalf of Plaintiff and the Class**

107.    Plaintiff reallege and incorporate by reference all paragraphs alleged herein

108.    Plaintiff and members of the Class members conferred a benefit on the Defendant by purchasing the Products

109.    Defendant has been unjustly enriched in retaining the revenues from Plaintiff's and Class Members' purchases of the Products, which retention is unjust and inequitable, because

-23-

Defendant sold Products that were not capable of being sold or held legally and which were legally worthless. Plaintiff paid a premium price for the Products.

110.    Because Defendant's retention of the non-gratuitous benefit conferred on it by Plaintiff and Class members is unjust and inequitable, Defendant must pay restitution to Plaintiff and the Class members for its unjust enrichment, as ordered by the Court. Plaintiff and those similarly situated have no adequate remedy at law to obtain this restitution.

111.    Plaintiff, therefore, seeks an order requiring Defendant to make restitution to her and other members of the Class.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of herself and those similarly situated, respectfully request that the Court enter judgement against Defendant as follows:

A.    Certification of the proposed Class, including appointment of Plaintiff's counsel as class counsel;

B.    An order temporarily and permanently enjoining Defendant from continuing the unlawful, deceptive, fraudulent, and unfair business practices alleged in this Complaint;

C.    An award of compensatory damages in an amount to be determined at trial;

D.    An award of statutory damages in an amount to be determined at trial;

E.    An award of punitive damages in an amount to be determined at trial;

F.    An award of treble damages;

G.    An award of restitution in an amount to be determined at trial;

H.    An order requiring Defendant to pay both pre- and post-judgment interest on any amounts awarded;

I.    For reasonable attorneys' fees and the costs of suit incurred; and

J.    For such further relief as this Court may deem just and proper.


## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

1

Dated:  November 3, 2021                      **GUTRIDE SAFIER LLP**

2                                              */s/Seth Safier/s/*
                                               Seth A. Safier, Esq.
3                                              Marie McCrary, Esq.
                                               Hayley Reynolds, Esq.
                                               100 Pine Street, Suite 1250
4                                              San Francisco, CA 94111

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Class Action Complaint

**Exhibit A**

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| **Happy Tot Oat Bars** | | | |
| Happy Tot Fiber & Protein Gluten Free Oat Bar | Organic apples & spinach | 4g fiber<br>2g protein<br><br>Fiber helps support the digestive system, but many tots don't get enough of this important nutrient each day. Protein is a key building block for little growing bodies that forms the foundation to help your tot grow up big and strong. Whole grains include the entire grain seed, which provides the delicious goodness that nature intended. | Tots & Tykes |
| Happy Tot Fiber & Protein Gluten Free Oat Bar | Organic bananas & carrots | 4g fiber<br>2g protein<br><br>Fiber helps support the digestive system, but many tots don't get enough of this important nutrient each day. Protein is a key building block for little growing bodies that forms the | Tots & Tykes |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | foundation to help your tot grow up big and strong. Whole grains include the entire grain seed, which provides the delicious goodness that nature intended. | |
| Happy Tot Super Foods Gluten Free Oat Bar | Blueberries & oatmeal | 350mg omega-3 (ALA) 3g fiber

Omega-3s (ALA) from flaxseed help your toddler get the most out of every bite.
Fiber helps support the digestive system, but many tots don't get enough of this important nutrient each day. | Tots & Tykes |
| Happy Tot Super Foods Gluten Free Oat Bar | Bananas, strawberries & sunflower butter bar | 350mg omega-3 (ALA) 3g fiber

Omega-3s (ALA) from flaxseed help your toddler get the most out of every bite. | Tots & Tykes |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | Fiber helps support the digestive system, but many tots don't get enough of this important nutrient each day. | |
| **Happy Tot Pouches & Happy Baby Pouches** | | | |
| Happy Tot Super Foods | Organic pears, green beans & peas + chia seeds | 600mg Omega-3 (ALA) 4g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic apples, sweet potatoes, carrots & cinnamon + super chia | 600mg Omega-3 (ALA) 3g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic pears, mangos & spinach + super chia | 600mg Omega-3 (ALA) 3g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
|  |  |  |  |
| Happy Tot Super Foods | Organic apples + butternut squash + super chia | 600mg Omega-3 (ALA) 2g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic bananas, peaches & mangos + super chia | 600mg Omega-3 (ALA) 3g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic apples, mangos & kale + super chia | 600mg Omega-3 (ALA) 3g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| Happy Tot Super Foods | Organic pears, beets & blueberries + super chia | 600mg Omega-3 (ALA) 4g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic apples, spinach, peas & broccoli + super chia | 600mg Omega-3 (ALA) 3g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Foods | Organic bananas, sweet potato & pumpkin + chia seeds | 600mg Omega-3 (ALA) 4g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| Happy Tot Fiber & Protein | Organic pears, raspberries, carrots & butternut squash | 3g fiber<br>3g protein<br><br>Protein is a key building block for little growing bodies & fiber help support the digestive system! Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Fiber & Protein | Organic pears, blueberries & spinach | 3g fiber<br>3g protein<br><br>Protein is a key building block for little growing bodies & fiber help support the digestive system! Here's to a happy & healthy start! | Tots & Tyke,  Stage 4 |
| Happy Tot Fiber & Protein | Organic pears, kiwi & kale | 3g fiber<br>3g protein<br><br>Protein is a key building block for little growing bodies & fiber help support the digestive system! Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| Happy Tot Fiber & Protein | Organic pears, peaches, pumpkin & apples + cinnamon | 3g fiber<br>3g protein<br><br>Protein is a key building block for little growing bodies & fiber help support the digestive system! Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Morning | Organic bananas, blueberries, yogurt & oats | 600mg Omega-3 (ALA)<br>2g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Morning | Organic apples, cinnamon, yogurt & oats + super chia | 600mg Omega-3 (ALA)<br>2g fiber<br><br>Omega-3s (ALA) from Chia seeds help your toddler get the most out of every bite. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| Happy Tot Super Bellies Immune + Digestive Support Blend | Organic bananas, spinach & blueberries | 35mg beta-glucan<br>2g prebiotic fiber<br><br>Beta-Glucan helps support your tot's immune system. Prebiotic Fiber helps support digestive health.  Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Bellies Immune + Digestive Support Blend | Organic pears, beets & blackberries | 35mg beta-glucan<br>2g prebiotic fiber<br><br>Beta-Glucan helps support your tot's immune system. Prebiotic Fiber helps support digestive health.  Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Bellies Immune + Digestive Support Blend | Organic bananas, carrots & strawberries | 35mg beta-glucan<br>2g prebiotic fiber<br><br>Beta-Glucan helps support your tot's immune system. Prebiotic Fiber helps support digestive health.  Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Smart | Organic bananas, mangos & spinach + coconut milk | 20mg DHA<br>100mg choline | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | Our inclusion of DHA & Choline gives your tot important nutrients to help support a healthy brain. Here's to a happy & healthy start! | |
| Happy Tot Super Smart | Organic bananas, beets & strawberries | 20mg DHA 100mg choline<br><br>Our inclusion of DHA & Choline gives your tot important nutrients to help support a healthy brain. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Morning Dairy Free | Organic bananas, dragon fruit, coconut milk & oats + super chia | 600mg Omega-3 (ALA) 2g fiber<br><br>This delicious dairy free blend includes Omega-3s (ALA) from CHIA seeds. Here's to a happy & healthy start! | Tots & Tykes, Stage 4 |
| Happy Tot Super Morning Dairy Free | Organic apples, acai, coconut milk + oats + super chia | 600mg Omega-3 (ALA) 2g fiber Whole grain oats | Tots & Tykes, Stage 4 |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | This delicious dairy free blend includes Omega-3s (ALA) from CHIA seeds. Here's to a happy & healthy start! | |
| Happy Baby Hearty Meals | Harvest vegetables & chicken with quinoa | 4g protein | Stage 3, 7+ Months |
| Happy Baby Hearty Meals | Organic root vegetables & turkey with quinoa | 3g protein | Stage 3, 7+ Months |
| Happy Baby Hearty Meals | Organic vegetable & beef medley with quinoa | 3g protein | Stage 3, 7+ Months |
| **Happy Tot Bowls** | | | |
| Happy Tot Organic Bowl | Oatmeal & sprouted quinoa with bananas & strawberries | 3g fiber<br>160mg Omega-3 (ALA) from chia<br><br>Your tot will love this chunky oatmeal that has 3g fiber to help support the digestive system and chia for omega-3s (ALA). The best part of all – 0g added sugar. | Tots & Tykes, 12+ months |
| Happy Tot Organic Bowl | Oatmeal & sprouted quinoa with apples and blueberries | 3g fiber<br>160mg Omega-3 (ALA) from chia<br><br>Your tot will love this chunky oatmeal that has 3g | Tots & Tykes, 12+ months |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | fiber to help support the digestive system and chia for omega-3s (ALA). The best part of all – 0g added sugar. | |
| Happy Tot Organic Bowl | Mac & Cheese with lentil pasta & veggie sauce | Full serving of veggies 3g protein<br><br>Made with lentil pasta, pumpkin, cauliflower, and carrot, this mac & cheese has a full serving of veggies* and 3g protein. *1 serving of vegetables in ¼ cup. | Tots & Tykes, 12+ months |
| Happy Tot Organic Bowl | Cheesy lentils & quinoa with cauliflower & parmesan sauce | Full serving of veggies 6g protein 3g fiber<br><br>Made with cheesy lentils, cauliflower and quinoa, this bowl has 6g protein, 3g fiber, and a full serving of veggies.* *1 serving of vegetables in ¼ cup. | Tots & Tykes, 12+ months |
| Happy Tot Organic Bowl | Turkey bolognese with lentil pasta & vegetable sauce | 4g protein 2g fiber | Tots & Tykes, 12+ months |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | | |
| Happy Tot Organic Bowl | Veggies & wild rice with mushrooms & parmesan | Full serving of veggies 5g protein<br><br>Help your go-getter grow better with a full serving* of organic, wholesome veggies! Your tot will love this yummy bowl of veggies & rice with 5g protein and NO artificial preservatives! *1 serving of vegetables in ¼ cup. | Tots & Tykes, 12+ months |
| Happy Tot Organic Bowl | Beef & quinoa fiesta with vegetable salsa | 6g protein 4g fiber | Tots & Tykes, 12+ months |
| Happy Tot Organic Bowl | Cheese & spinach ravioli with marinara sauce | Full serving of veggies 4g protein<br><br>Help your go-getter grow better with a full serving* of organic, wholesome veggies! Your tot will love this yummy bowl of 100% whole wheat pasta with 4g of protein and NO artificial preservatives! | Tots & Tykes, 12+ months |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | *1 serving of vegetables in ¼ cup. | |
| Happy Tot Organic Bowl | Squash ravioli with squash, pumpkin & sage sauce | Full serving of veggies 3g protein<br><br>Help your go-getter grow better with a full serving* of organic, wholesome veggies! Your tot will love this yummy bowl of 100% whole wheat pasta with 3g of protein and NO artificial preservatives!<br>*1 serving of vegetables in ¼ cup. | Tots & Tykes, 12+ months |
| **Happy Baby Greek Yogis** | | | |
| Happy Baby Greek Yogis | Blueberry & purple carrot | 2g of protein | Crawling baby |
| Happy Baby Greek Yogis | Strawberry Banana | 2g of protein | Crawling baby |
| *Happy Tots Creamies* | | | |
| Happy Baby Organic Creamies | Strawberry, raspberry & carrot | 40% veggies | Crawling baby |
| Happy Baby Organic Creamies | Apple, spinach, pea & kiwi | 40% veggies | Crawling baby |
| *Happy Tot Multi-Grain Cookies* | | | |
| Happy Tot ABC Multi-Grain Cookies | Organic cinnamon & sweet potato + flaxseed | 2g whole grains<br>160mg Omega-3 (ALA) | Tots & Tykes |
| Happy Tot ABC Multi-Grain Cookies | Organic vanilla and oat + flaxseed | 3g whole grains<br>160mg Omega-3 (ALA) | Tots & Tykes |
| *Happy Baby Puffs* | | | |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| Happy Baby Superfood Puffs | Purple carrot & blueberry | 25mg choline to support brain and eye health | Crawling baby |
| Happy Baby Superfood Puffs | Strawberry & beet | 25mg choline to support brain and eye health | Crawling baby |
| Happy Baby Superfood Puffs | Sweet potato & carrot | 25mg choline to support brain and eye health | Crawling baby |
| Happy Baby Superfood Puffs | Kale & spinach | 25mg choline to support brain and eye health | Crawling baby |
| Happy Baby Superfood Puffs | Banana & pumpkin | 25mg choline to support brain and eye health | Crawling baby |
| Happy Baby Superfood Puffs | Apple & broccoli | 25mg choline to support brain and eye health | Crawling baby |
| *Happy Baby Baking Mixes* | | | |
| Happy Baby Pancake & Waffle Mix | | 100% whole grains  With iron to help support brain development | Crawling baby |
| Happy Baby Muffin Mix | Apple, carrot, & cinnamon | 100% whole grains | Walking baby with support |

| Product Type | Flavor | Nutrient Content Claims | Age |
|---|---|---|---|
| | | With iron to help support brain development | |
| **Happy Baby Cereal** | | | |
| Happy Baby Oats & Quinoa Baby Cereal | | With iron to support brain development | Sitting baby |
| Happy Oats Oatmeal Baby Cereal | | With iron to support brain development | Sitting baby |

EXHIBIT B

DocuSign Envelope ID: 1C7EC8ZC-D4F1-40EF-85D8-74C5DF16C09C

I, Melissa Sanchez, declare:

1.      I am a Plaintiff in this action. If called upon to testify, I could and would competently testify to the matters contained herein based upon my personal knowledge.

2.      I submit this Declaration pursuant to California Code of Civil Procedure section 2215.5 and California Civil Code section 1780(d).

3.      I reside in San Jose, California. I purchased Happy Tot products for my child when he was under the age of two, including, Happy Tot Morning Baby Food Pouch Organic Blend - Banana, Blueberry, Yogurt, & Oats; Happy Tot Super Smart Baby Food Pouch - Banana, Mango, Spinach with Coconut Milk; Happy Tot Super Bellies Baby Food Pouch - Bananas, Carrots & Strawberries; Happy Tot Super Morning Baby Food Pouch - Apples, Cinnamon Yogurt & Oats with Superchia; Happy Tot Super Morning Baby Food Pouch - Bananas, Dragonfruit, Coconut Milk & Oats; Happy Baby Straw-berry & Beet Superfood Puffs.  I purchased the products from Buy Buy Baby and Target stores in San Jose, California.

I declare under penalty of perjury under the laws of California that the foregoing is true and correct.

Executed this 29th day of October 2021, in San Jose, California.



Melissa Sanchez

DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION