UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA SANCHEZ,<br><br>    Plaintiff,<br><br> v.<br><br>NURTURE, INC.,<br><br>    Defendant. | Case No. 5:21-cv-08566-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: Dkt. No. 13 |

Plaintiff Melissa Sanchez filed this class action alleging that Defendant's products have been improperly labeled and misbranded in violation of several California and federal laws such as, the Consumers Legal Remedies Act ("CLRA"), False Advertising, Business and Professions Code ("FAL"), and the Unfair Competition Law ("UCL"). Class Action Complaint ("Compl."), Dkt. No. 1. Before the Court is Defendant's motion to dismiss Plaintiff's complaint under Federal Rules of Civil Procedure 12(b)(6) and 9(b). *See* Defendant Nurture, Inc.'s Notice of Motion and Motion to Dismiss Complaint ("Mot."), Dkt. No. 13. On February 11, 2022, Plaintiff filed an opposition, to which Defendant filed a reply. *See* Plaintiff's Opposition to Defendant Nurture, Inc.'s Motion to Dismiss Complaint ("Opp."), Dkt. No. 15; Defendant Nurture, Inc.'s Reply in Support of Motion to Dismiss Complaint ("Reply"), Dkt. No. 16. Having considered the Parties' submissions, the relevant law, and the record in this case, the Court **GRANTS IN PART & DENIES IN PART** Defendant's motion to dismiss.[1]

---

[1] On June 8, 2022, this Court found this motion appropriate for decision without oral argument pursuant to Civil Local Rule 7-1(b). *See* Dkt. No. 19.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
1

**I.     BACKGROUND**

On November 3, 2021, Plaintiff filed a complaint against Defendant, alleging that Defendant's products have been improperly labeled and misbranded in violation of several California and federal laws such as, the CLRA, the FAL, and the UCL.  Compl. ¶¶ 15–24.  Plaintiff also alleges claims for unjust enrichment and common law fraud.  Compl. ¶¶ 19–20, 23–24.  Defendant manufactures, distributes, markets, advertises, and sells a variety of baby and toddler food products under the brand names "Happy Baby" and "Happy Tot."  Compl. ¶ 12.

Plaintiff is a California consumer who began purchasing Happy Tot baby food pouches for her child in the following varieties: Happy Tot Morning Baby Food Pouch Organic Blend-Banana, Blueberry, Yogurt, & Oats; Happy Tot Super Smart Baby Food Pouch-Banana, Mango, Spinach with Coconut Milk; Happy Tot Super Bellies Baby Food Pouch-Bananas, Carrots & Strawberries; Happy Tot Super Morning Baby Food Pouch-Apples, Cinnamon Yogurt & Oats with Superchia; Happy Tot Super Morning Baby Food Pouch-Bananas, Dragonfruit, Coconut Milk & Oats; and Happy Baby Strawberry & Beet Superfood Puffs.  Compl. ¶ 50.  Plaintiff purchased the products from Buy Buy Baby and Target in San Jose, California.  Compl. ¶ 50.

Plaintiff alleges that "Defendant misbrands its baby and toddler food products by making nutrient content claims on the product packages that are strictly prohibited by the Food and Drug Administration ("FDA"), and by misleading purchasers into believing that its products are healthier than other products for children under two years of age in order to induce parents into purchasing Defendant's products."  Compl. ¶ 3.  Plaintiff alleges that the following representations on the packaging of the purchased and other unpurchased food products were unlawful and/or misleading: grams of protein, grams of fiber, and/or milligrams of omega-3s, and implied nutrient content claims or health claims.  Compl. ¶¶ 37–38.  Plaintiff alleges that she made each of her purchases after reading the nutrient content claims on the product labels.  Compl. ¶ 51.  Plaintiff provided an example of two claims on the front label of Happy Tot Morning Baby Food Pouch Organic Blend-Banana, Blueberry, Yogurt, & Oats food pouch, which states, "2g Fiber," and "600mg Omega-3 ALA."  Compl. ¶ 51.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
2

1    Plaintiff further alleges that she paid more money for Defendant's products than she would
2    have paid if the products did not contain nutrient content claims. Compl. ¶ 53. Plaintiff also
3    alleges that within the class period of November 3, 2017, and the present, she and other members
4    of the Class have been economically damaged as the products are worth less than their purchase
5    price. Compl. ¶ 56. Further, the Plaintiff provides an expansive list of purchased and
6    unpurchased products that allegedly have unlawful or misleading claims on the products. Exh. A,
7    Dkt. No. 1.

## II. LEGAL STANDARD

### A. Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). "Dismissal under Rule 12(b)(6) is appropriate only where the complaint lacks a cognizable legal theory or sufficient facts to support a cognizable legal theory." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1104 (9th Cir. 2008). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

A court generally may not consider any material beyond the pleadings when ruling on a Rule 12(b)(6) motion. If matters outside the pleadings are considered, "the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). However, documents appended to the complaint, incorporated by reference in the complaint, or which properly are the

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
3

subject of judicial notice may be considered along with the complaint when deciding a Rule 12(b)(6) motion. *Khoja v. Orexigen Therapeutics*, 899 F.3d 988, 998 (9th Cir. 2018); *see also Hal Roach Studios, Inc. v. Richard Feiner & Co., Inc.*, 896 F.2d 1542, 1555 (9th Cir. 1990). Likewise, a court may consider matters that are "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." *Roca v. Wells Fargo Bank, N.A.*, No. 15-CV-02147-KAW, 2016 WL 368153, at *3 (N.D. Cal. Feb. 1, 2016) (quoting Fed. R. Evid. 201(b)).

### B. Rule 9(b)

Consumer protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985).

Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)). "[I]n a case where fraud is not an essential element of a claim, only allegations . . . of fraudulent conduct must satisfy the heightened pleading requirements of Rule 9(b)" while "[a]llegations of non-fraudulent conduct need satisfy only the ordinary notice pleading standards of Rule 8(a)." *Id.* at 1104–05. With respect to omissions-based fraud claims, "the pleading standard is lowered on account of the reduced ability in an omission suit 'to specify the time, place, and specific content, relative to a claim involving affirmative misrepresentations.'" *Barrett v. Apple Inc.*, 2021 WL 827235, at *7 (N.D. Cal. Mar. 4, 2021) (quoting *In re Apple & AT & TM Antitrust Litig.*, 596 F. Supp. 2d 1288, 1310 (N.D. Cal. 2008)); *see also Falk v. Gen. Motors Corp.*, 496 F. Supp. 2d 1088, 1099 (N.D. Cal. 2007).

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
4

### C. California Statutes

Plaintiff brings "nutrient content claims," which are claims about specific nutrients contained in a product that, pursuant to Section 403 of the Food, Drug, and Cosmetic Act ("FDCA"), must be made in accordance with federal regulations. Compl., ¶¶ 22–31. California expressly adopts the requirements of the FDCA and incorporates the FDCA's requirements as the food labeling requirements of the state of California. *See* Cal. Health & Safety Code § 110100 ("All food labeling regulations and any amendments to those regulations adopted pursuant adopted pursuant to the federal act, in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state."); Cal. Health & Safety Code § 109875 ("The California Sherman Food, Drug, and Cosmetic Law").

Plaintiff alleges violations of the UCL, FAL, and CLRA. The UCL prohibits business practices that are unlawful, unfair, or fraudulent. The UCL "bars 'unfair competition' and defines the term as a 'business act or practice' that is (1) 'fraudulent,' (2) 'unlawful,' or (3) 'unfair.'" *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1135 (2020). "Each is its own independent ground for liability under the unfair competition law, but their unifying and underlying purpose is to protect both consumers and competitors by promoting fair competition in commercial markets for goods and services." *Id.* (quotation marks and citations omitted).

"California's false advertising law bars 'any advertising device . . . which is untrue or misleading.'" *Id.* (quoting Cal. Bus. & Prof. Code § 17500). "[T]his law and the fraudulent prong of the unfair competition law substantively overlap[,]" and thus "plaintiff's burden under these provisions is the same[.]" "[T]o state a claim under either the UCL or the false advertising law, based on false advertising or promotional practices, it is necessary only to show that members of the public are likely to be deceived." *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (quotation marks and citation omitted).

The CLRA defines various "unfair methods of competition and unfair or deceptive acts or practices." Cal. Civ. Code § 1770. Some of the unfair methods or acts included are "[r]epresenting that goods . . . have . . . characteristics [or] . . . benefits . . . that they do not

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

have[,]" and "[r]epresenting that goods . . . are of a particular standard, quality, or grade . . . if they are of another." *Id.* The UCL, FAL, and CLRA utilize the reasonable consumer standard, *Califia*, 44 Cal. App. 5th at 1136, "which requires a plaintiff to show potential deception of consumers acting reasonably in the circumstances-not just any consumers." *Hill v. Roll Int'l. Corp.*, 195 Cal. App. 4th 1295, 1304 (2011).

### D. Regulatory Background

Aside from exceptions made by regulation, "no nutrient content claims may be made on food intended specifically for use by infants and children less than 2 years of age[.]" 21 C.F.R. § 101.13(b)(3). A nutrient content claim may be express or implied. "An expressed nutrient content claim is any direct statement about the level (or range) of a nutrient in the food, e.g., 'low sodium' or 'contains 100 calories.'" *Id.* at § 101.13(b)(1). An implied nutrient claim is one that either "[d]escribes the food or an ingredient therein in a manner that suggests that a nutrient is absent or present in a certain amount (e.g., 'high in oat bran')" or "[s]uggests that the food, because of its nutrient content, may be useful in maintaining healthy dietary practices and is made in association with an explicit claim or statement about a nutrient (e.g., 'healthy, contains 3 grams (g) of fat')." *Id.* at § 101.13(b)(2).

### III. DISCUSSION

#### A. Standing

Defendant argues that Plaintiff lacks Article III and statutory standing to challenge label statements on products they did not see or buy. Mot. at 10–13. Plaintiff purchased six products from Defendant but challenges the labeling on fifty-four products. For Article III standing, a plaintiff must allege an injury-in-fact, and for statutory standing under the UCL and FAL, Plaintiff must show that she suffered "injury in fact and [] lost money or property as a result of the unfair competition." Cal. Bus. & Prof. Code §§ 17204, 17535; *Wilson v. Frito-Lay N. Am., Inc.*, 961 F. Supp. 2d 1134, 140 (N.D. Cal. 2013). Likewise, for the CLRA, Plaintiff must show "economic injury." *Victor v. R.C. Bigelow, Inc.*, 2014 WL 1028881, at *5 (N.D. Cal. Mar. 14, 2014); *see also Carrea v. Dreyer's Grand Ice Cream, Inc.*, 2011 WL 159380, at *2–3 (N.D. Cal. Jan. 10, 2011)

(analyzing statutory standing jointly for FAL, UCL, and CLRA claims).  To have standing under Article III of the Constitution, "[t]he plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1547 (2016) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992)).

It is undisputed that Plaintiff purchased products from Defendant.  Defendant asserts, however, that Plaintiff lacks standing to challenge the forty-eight other products that she did not purchase because she suffered no economic injury as to those products.  In opposition, Plaintiff argues that she still has standing because the unpurchased products are substantially similar to the products that she did purchase.

In the Ninth Circuit, "[t]here is no controlling authority on whether [p]laintiffs have standing for products they did not purchase." *Miller v. Ghirardelli Chocolate Co.*, 912 F. Supp. 2d 861, 868 (N.D. Cal. 2012).  Although some district courts reserve the issue until a motion for class certification, "[t]he majority of the courts that have carefully analyzed the question hold that a plaintiff may have standing to assert claims for unnamed class members based on products he or she did not purchase so long as the products and alleged misrepresentations are substantially similar." *Id.* at 869; *see also Papasan v. Domestic Corp.*, 2017 WL 4865602, at *8 (N.D. Cal. Oct. 27, 2017).  If the products are sufficiently similar, "any concerns regarding material differences in the products can be addressed at the class certification stage." *Anderson v. Jamba Juice Co.*, 888 F. Supp. 2d 1000, 1006 (N.D. Cal. 2012).  However, "[w]here the alleged misrepresentations or accused products are dissimilar, courts tend to dismiss claims to the extent they are based on products not purchased." *Miller*, 912 F. Supp. 2d at 870.

Courts have found substantial similarity for purposes of standing where (1) the products are physically similar; (2) the differences between the products are immaterial because the legal claim and injury to the customer are the same; and (3) both the products and the legal claims and injury are similar.  *See Ang. v. Bimbo Bakeries USA, Inc.*, 2014 WL 1024182, at *4–8 (N.D. Cal. Mar. 13, 2014).  The court agrees with Judge Orrick that "the best approach is one which focuses

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
7

on whether the type of claim and consumer injury is substantially similar as between the purchased and unpurchased products. *Id.* at *8. "That determination necessarily focuses on whether the resolution of the asserted claims will be identical between the purchased and unpurchased products." *Id.*

For example, in *Astiana v. Dreyer's Grand Ice Cream, Inc.*, 2012 WL 2990766 (N.D. Cal. July 20, 2012). which concerned labels for a variety of ice cream flavors, "Plaintiffs [] challeng[ed] the same basic mislabeling practice across different product flavors[,]" and thus there was sufficient similarity to support standing for all the products. In contrast, in *Wilson*, which concerned labels for a variety of different products like potato chips, corn chips, and puffed corn products, the court determined that there was not "substantial similarity among the Purchased Products and the Non–Purchased Products." 961 F. Supp. 2d at 1141. Thus, the court held that there was not standing to pursue allegations regarding the unpurchased products. *Id.* at 1142.

Plaintiff provided a chart listing each challenged product and the nutrient content claim. Compl., Exhibit A. The purchased products are food pouches and puffs. Although the court was not provided with an ingredient list, each of the unpurchased food pouches and puffs product claims appear to be similar in nature both in name and in ingredients, such as Omega-3, fiber, probiotic fiber, choline, and CHA. Thus, the alleged implied nutrient content claims are substantially similar, and Plaintiff has standing to pursue claims regarding unpurchased food pouches and puff products. *See Astiana*, 2012 WL 2990766, at *13 ("[C]oncerns . . . about material differences are better addressed at the class certification stage rather than at the 12(b)(6) stage.").

However, the unpurchased products of bowls, bars, cereals, baking mixes, greek yogis, creamies, and cookies are not sufficiently similar to the purchased products. The composition of the products varies significantly. Plaintiff argues the products are similar to each other because they contain similar nutrient content claims. *Id*. at 9-10. The Court disagrees. These unpurchased products contain different ingredients from the purchased products and are thus markedly distinct from the purchased products. This is dispositive. *See Yamasaki v. Zicam LLC*, 2021 WL

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
8

4951435, at *3 (N.D. Cal. Oct. 25, 2021) ("The Court accordingly finds that Plaintiff has failed to establish that Zicam Nasal Spray and Zicam Nasal Swabs, which do not contain zinc, are substantially similar to the other unpurchased products that contain zinc."); *accord Lytle v. Nutramax Lab'ys, Inc.*, 2019 WL 8060070, at *3 (C.D. Cal. Sept. 26, 2019) (dismissing claims against unpurchased products that contained different key ingredients where claims were based on ineffectiveness of those key ingredients).

Plaintiff has Article III and statutory standing to pursue their claims regarding unpurchased pouch and puff products. However, Plaintiff lacks standing to pursue claims regarding unpurchased bowls, bars, cereals, baking mixes, greek yogis, creamies, and cookies.

### B. UCL Unlawfulness Claim[2]

The UCL provides for a cause of action to challenge "any unlawful, unfair or fraudulent business act or practice and unfair, deceptive, untrue or misleading advertising." Cal. Bus. & Prof. Code § 17200. Plaintiff is pursuing both "unlawful" and "fraudulent" theories of violation of the UCL. For the "unlawful" theory, Plaintiff argues that the labels contained nutrient content claims in violation of state laws and FDA regulation, and thus Defendant engaged in an unlawful business act or practice. "To prevail on a claim under the unlawful prong of the unfair competition law, the plaintiff must show that a challenged advertisement or practice violates any federal or California statute or regulation." *Califia*, 44 Cal. App. 5th at 1136 (quotation marks and citation omitted).

Defendant argues that its labels did not violate FDA regulations, and thus there was no unlawful practice. Whether the labels are in violation of FDA regulations depends on whether the statements on the labels such as "2g Fiber" and "600mg Omega-3 ALA" are nutrient content claims as defined by FDA regulations. While permitted for products for older children and adults,

---

[2] In her complaint, Plaintiff asserts an "unfair" UCL claim. Compl. ¶ 93. Defendant argues that this claim must be dismissed. Plaintiff offers no response to Defendant's argument on the UCL unfair prong claim (Mot. at 17–18), which requires dismissal of the claim. *Pers. Elec. Transports, Inc. v. Office of U.S. Tr.*, 313 F. App'x 51, 52 (9th Cir. 2009) (an argument is waived when not raised in the opposition to a motion to dismiss). Accordingly, the Court **GRANTS** Defendant's motion to dimiss Plaintiff's unfair UCL claim.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
9

1   nutrient content claims are not permitted for products intended for specific use by children below

2   two years of age. 21 C.F.R. § 101.13(b)(3). The Complaint adequately alleges that the products at

3   issue are marketed for children under the age of two. *See* Compl. ¶¶ 33–35. Thus, FDA

4   regulation prohibits nutrient content claims on the challenged products.

5         Nutrient content claims are statements that "expressly or implicitly characterize[ ] the level

6   of a nutrient." 21 C.F.R. § 101.13(b). The FDA regulations also require labels to include the

7   "nutrition facts" and companies are required to disclose information about the presence of

8   specified nutrients in this label. *Id.* § 101.9(c). Although the nutrition label contains information

9   about nutrient content, the claims made in it are not considered "nutrient content claims" for the

10  purposes of FDA regulations. *See id.* § 101.13(c). However, an identical statement outside of the

11  nutrition label is still considered a nutrient content claim and is therefore subject to section 101.13.

12  As a result, "a requirement to state certain facts in the nutrition label is not a license to make that

13  statement elsewhere on the product." *Reid v. Johnson & Johnson*, 780 F.3d 952 (9th Cir. 2015);

14  *see also Hawkins v. Kroger Co.*, 906 F.3d 763 (9th Cir. 2018).

15        Defendant argues that two of its labels did not violate FDA regulations. Defendant

16  contends that the labels "Omega-3s (ALA) from Chia seeds to help your toddler get the most out

17  of every bite. Here's to a happy & healthy start!" and "Beta-Glucan helps support your tot's

18  immune system. Prebiotic Fiber helps support digestive health. Here's to a happy & healthy

19  start!" are structural claims, not nutrient content claims. Defendant argues that structure or

20  function claims are statements that "describe the role of the nutrient . . . intended to affect normal

21  structure or function in humans" or "characterize the means by which a nutrient . . . acts to

22  maintain such structure or function." *Id.* at 16; *see id.* 21 C.F.R. § 101.93(f).

23        Defendant cites *Andrade-Heymsfield v. Danone US, Inc.* as support. There, the court

24  found that the use of "healthy" was used in relating to function of bones. *Andrade-Heymsfield v.*

25  *Danone US, Inc.,* 2019 WL 3817948, at *7 (S.D. Cal. Aug. 14, 2019) ("Our delicious coconutmilk

26  is a good source of calcium plus an excellent source of vitamin D – nutrients that help maintain

27  healthy bones . . . [T]he word 'healthy' in the context of 'help maintain healthy bones' is not

28  Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
10

United States District Court
Northern District of California

necessarily describing the Coconut Milk itself as 'healthy' on its own."). Likewise, in this case, the two statements identified by Defendant are not nutrient content claims because they describe the function of the nutrient, not the product itself. 21 C.F.R. § 101.93(f).

This same reasoning applies to the other statements identified by Plaintiff like "With iron to help support brain development." Claims about iron are not unlawful. FDA regulations permit nutrient content claims about minerals, like iron, that "describe[] the percentage of a vitamin or mineral in the food, including foods intended specifically for use by infants and children less than 2 years of age, in relation to a Reference Daily Intake (RDI) as defined in § 101.9." *See* 21 C.F.R. § 101.13(q)(3).

However, the inclusion of statements on the challenged products about the levels of a nutrient—*i.e.*, 680 mg Omega-3 (ALA)—are nutrient content claims, even if the information was also included in the Nutrient Facts Panel. Because the labels contain nutrient content claims in violation of FDA regulation, Plaintiffs have adequately alleged that Defendant engaged in an unlawful practice as to *these* specific type of nutrient content claims.

### C.  CLRA, FAL, Common Law Fraud, and UCL Fraudulent Practice Claims

The CLRA, FAL, UCL "fraudulent" prong, and common law fraud all require establishing that Defendant's practices would mislead a reasonable consumer. *See Hill*, 195 Cal. App. 4th at 1301 (concluding "no reasonable consumer would be misled" by the defendant's representations in a case alleging CLRA, FAL, common law fraud, and UCL claims). "[W]hether a business practice is deceptive will usually be a question of fact not appropriate for decision" on a motion to dismiss. *Williams v. Gerber Prods. Co.*, 552 F.3d 934, 938 (9th Cir. 2008). That general principle, however, does not mean granting a motion to dismiss as to whether the reasonable consumer requirement is met may never happen. Here, no reasonable consumer would be misled by the inclusion of truthful statements about nutrient contents on the front of the challenged labels, and thus Plaintiffs have not stated a claim for the violation of any of these laws.

Plaintiff has two theories of how a consumer would be misled by the inclusion of nutrient content claims. First, Plaintiff argues that "the claims lead consumers to believe that an increased

1  intake of the advertised nutrients is important for their child when, in fact, such claims are

2  prohibited because of the lack of evidence to support such a claim. Compl. ¶ 21. Second, Plaintiff

3  argues that the claims mislead consumers to believe that the products were superior to competitor

4  products that did not contain unlawful nutrient claims. Compl. ¶¶ 21, 75. Neither of these

5  theories is compelling.

As for the first theory, there is no support in the Complaint for the proposition that there is a lack of evidence as to whether the nutrients touted on the label provide a benefit to children. As in *Davidson v. Sprout Foods Inc.*, the Complaint does not have sufficient evidence to support Plaintiff's allegation that "there is a lack of evidence as to whether the nutrients touted on the label provide a benefit to children." *Davidson*, 2022 WL 2668481 at *5. Further, there are no direct statements about the contents of the products at issue, much less an implication that the products at issue contain specific levels (or healthful levels of specific nutrients). *See Krommenhock v. Post Foods, LLC*, 2018 WL 1335867, at *10 (N.D. Cal. Mar. 15, 2018). Plaintiff has not established that the touted nutrients do *not* provide the benefit described.

The second theory also fails. The statements about the nutrient contents are facially true, and do not invoke comparisons to other products. The California Court of Appeal in *Califia Farms* recognized that "statements a business affirmatively and truthfully makes about its product and which do not on their face mention or otherwise reference its competing products at all" exist at the far end of the spectrum of possibly misleading statements. 44 Cal. App. 5th at 1139. In *Califia*, the plaintiff challenged under the UCL, FAL, and CLRA the inclusion of the phrase "No Sugar Added" on the label of tangerine juice and argued that statement was misleading because it implied competing products did contain added sugar, and that the juice in question contained less sugar than competing brands that did not have "No Sugar Added" on their labels. *Id.* at 1132–33. The court held that truthful statements that do not reference competing products "are not actionable as a matter of law." *Id.* at 1139. The Califia court emphasized that a reasonable consumer is unlikely to make the series of inferential leaps needed to reach the plaintiff's conclusion that the challenged statement implied other products contained added sugar or more

1   sugar. *Id.* The court reasoned that adopting the plaintiff's theory would place almost any

2   advertisement truthfully touting a product's attributes at issue for litigation. *Id.*

3         The reasoning of *Califia* applies. The challenged statements, while in violation of FDA

4   regulation, are fully truthful and contain the same information found elsewhere on the label. It

5   requires many inferential leaps for a reasonable consumer to reach the conclusion that the absence

6   of such language on other products would mean those products did not contain those same

7   nutrients. Moreover, a consumer concerned about these issues could simply compare the Nutrition

8   Facts Panel on each product he or she was interested in purchasing. Accordingly, "no reasonable

9   consumer would be misled" by the truthful statements on the label to believe that other products

10  did not contain these same nutrients and were therefore superior. *Hill*, 195 Cal. App. 4th at 1301.

11        Plaintiff fails to show at the pleading stage that a reasonable consumer would be misled by

12  the challenged statements on Defendant's product labels. The motion to dismiss is **GRANTED** as

13  to the FAL, CLRA, and common law fraud claims, as well as the "fraudulent" prong of the UCL

14  claim.

### D. Unjust Enrichment

"[I]n California, there is not a standalone cause of action for 'unjust enrichment,' which is synonymous with 'restitution.'" *Astiana v. Hain Celestial Grp., Inc.*, 783 F.3d 753, 762 (9th Cir. 2015). "When a plaintiff alleges unjust enrichment, a court may 'construe the cause of action as a quasi-contract claim seeking restitution.'" *Id.* (quoting *Rutherford Holdings, LLC v. Plaza Del Rey*, 223 Cal. App. 4th 221, 231 (2014). Further, at the pleading stage, an unjust enrichment claim may be duplicative of other claims. *See In re Safeway Tuna Cases*, 2016 WL 3743364, at *2 (N.D. Cal. July 13, 2016). Defendant argues that the unjust enrichment claim is based on the same factual basis as the other claims, and thus because Plaintiff "'failed to state claims under the California consumer protection statutes [due to implausibility], the unjust enrichment claim fails as well.'" Mot. at 21 (quoting *Chuang v. Dr. Pepper Snapple Group, Inc.*, 2017 WL 4286577, at *8 (C.D. Cal. Sept. 20, 2017)). Plaintiff, however, has adequately stated a claim for their UCL "unlawful" claim. Further, Defendant does not make any argument about the substance of the

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
13

unjust enrichment claim itself. Accordingly, at this stage, the unjust enrichment claim may procced.

### E.  Equitable Relief

The Ninth Circuit has held that a plaintiff "must establish that she lacks an adequate remedy at law before securing equitable restitution for past harm." *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834, 844 (9th Cir. 2020). Defendant argues that Plaintiff's FAL and UCL claims must be dismissed because they only allow for equitable relief, and the Complaint makes clear that legal remedies pleaded under the CLRA and common law fraud in the form of money damages are adequate. Reply at 13. As explained above, however, the FAL, CLRA and common law fraud claims have not been adequately pled. Thus, as the Complaint currently stands, the UCL claim and the unjust enrichment claims are the only viable claims, and Defendant's arguments concerning the availability of legal remedies under the CLRA and common law fraud claims are moot. Likewise, the argument that Plaintiff cannot pursue injunctive relief because she has not alleged inadequate remedies at law is moot, because at this juncture Plaintiff has not adequately pled claims seeking legal remedies.

### IV.  CONCLUSION

For the foregoing reasons, the motion to dismiss is **DENIED** as to the "unlawful" theory of the UCL claim and the unjust enrichment claim. The motion to dismiss is **GRANTED** in all other respects. Plaintiff is granted **leave to amend**. Should Plaintiff choose to amend her complaint, the amended complaint is due within 30 days of the filing of this Order.

**IT IS SO ORDERED.**

Dated: September 7, 2022

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
14