UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| MELISSA SANCHEZ, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>NURTURE, INC.,<br><br>    Defendant. | Case No.  5:21-cv-08566-EJD<br><br>**ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS**<br><br>Re: ECF No. 35 |

Plaintiffs Melissa Sanchez and Beverly Cassel bring this food labeling action on behalf of themselves and those similarly situated to challenge the labeling practices of Defendant Nurture, Inc.'s "Happy Baby" and "Happy Tot" line of food products. The Court had previously dismissed Plaintiff Sanchez's complaint with leave to amend (ECF No. 24), which has since been amended to add an additional plaintiff and new theories of fraud and deceptive labeling. First Am. Class Action Compl. ("FAC"), ECF No. 29. Defendant moved again to dismiss the claims in the FAC (ECF No. 35, "Mot."), and the Court heard oral arguments on April 27, 2023.

Based on the following, the Court GRANTS IN PART and DENIES IN PART Defendant's motion to dismiss.

**I.  BACKGROUND**

    **A.  Defendant's Products**

Defendant Nurture, Inc. is a Delaware corporation that manufactures, distributes, markets, advertises, and sells a line of baby and toddler food products under the brand names, "Happy Baby" and "Happy Tot." FAC ¶ 13. At issue here are forty-three (43) products (the "Products") that allegedly contain "nutrient content" claims and are intended for children under the age of two.

1   FAC ¶¶ 13–14; *see also id.*, Ex. A ("Product Chart").

2         The challenged nutrient content claims are prominently displayed on Defendant's Products

3   and contain language such as "2g of Protein, 4g of Fiber and 350 mg Omega-3 from Chia ALA."

4   *Id.* ¶ 37.  The nutrient amounts reflected in the nutrition content claims match the information

5   contained on the nutritional facts panel on the back of the Products.  *Id.*  Some Products also

6   advertise that additional nutrients were added, such as protein and choline, *e.g.*, "+ 1 1/3 tsp Pea

7   Protein."  *Id.* ¶ 39.  The FAC alleges that the nutrient content claims on Defendant's Product

8   "deceive and mislead reasonable consumer into believing that the Products provide *physical health*

9   *benefits* for their children when in fact, the Products are *harmful for children under two both*

10  *nutritionally and developmentally*."  FAC ¶¶ 21 (emphasis added), 44.  The FAC also alleges these

11  claims are deceptive because they "mislead[] consumers into believing that foods for children

12  under two should be purchased based on the quantities of the listed nutrients, when other

13  considerations are just as, or more, important."  *Id.* ¶ 53.

14        The FAC cites three harmful effects of the Products on young children.  First, the

15  "Products have high amounts of both added sugars and free sugars."  *Id.* ¶ 56.  Second, because

16  many of Defendant's Products are pureed, the raw ingredients are "stripped of insoluble fiber and

17  the liver is no longer protected from the sugar in the food."  *Id.* ¶ 57.  And third, the FAC alleges

18  that the long-term use of puree pouches may be detrimental to children because they prevent

19  children from learning to chew and swallow soft foods, which in turn may lead to "delays in motor

20  development" and "bad long-term snacking habits and routine overeating."  *Id.* ¶¶ 59–64.

21      **B.**    **Plaintiffs**

22        Plaintiff Melissa Sanchez is a California consumer who purchased nine (9) different Happy

23  Baby and Happy Tots Products from Buy Buy Baby and Target stores in San Jose, California.  *See*

24  FAC ¶ 75 (listing products).  Ms. Sanchez purchased these Products after reading the nutrient

25  content claims on their labels, believing them to be "superior in providing nutrition for her child."

26  *Id.* ¶ 76.  The FAC alleges that, without the nutrient content on the labels, Ms. Sanchez either

27  would not have purchased Defendant's Products or would not have been willing to pay a premium

28  Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
2

United States District Court
Northern District of California

1   for them. *Id.* ¶¶ 78–79. Ms. Sanchez regularly shops at stores where the Products are sold and, if

2   Defendant's Products did not contain the misleading labels, she would likely purchase the

3   Products again in the future. *Id.* ¶ 80.

4         Plaintiff Beverly Cassel purchased four (4) different Happy Baby and Happy Tots Products

5   from Safeway and Whole Foods stores in and around Santa Rosa, California. FAC ¶ 81. Like Ms.

6   Sanchez, Ms. Cassel purchased these products after reading the nutrient content claims, believing

7   them to be "healthful for her child under two." *Id.* ¶ 82. Without the nutrient content claims, Ms.

8   Cassel would not have purchased the Products or paid a premium for them, but if the Products'

9   labels are no longer misleading, she would likely purchase them again. *Id.* ¶¶ 84–86.

10        The FAC further alleges that Plaintiffs have been economically injured because the

11  Products are worth less than the price they had paid. FAC ¶¶ 87–88.

12      **C.**    **Procedural History**

13        On November 3, 2021, Plaintiff Sanchez filed the original complaint against Defendant,

14  alleging that Defendant's products have been improperly labeled and misbranded in violation of

15  several California and federal laws, including the CLRA, FAL, UCL, common law fraud, and

16  unjust enrichment. ECF No. 1.

17        Defendant moved to dismiss the Complaint on January 14, 2022 (ECF No. 13), which the

18  Court granted and denied in part on September 7, 2022. ECF No. 24 ("Sept. 7 Order"). In its

19  September 7 Order, the Court found that Plaintiff had sufficiently stated a claim under the

20  unlawful prong of the UCL and unjust enrichment claims, because the Products violated Food and

21  Drug Administration ("FDA") regulations by containing "nutrient content" claims on products

22  intended for children under two. Sept. 7 Order 9–11. However, the Court dismissed the

23  Complaint's claims alleging deception and fraud, finding that a reasonable consumer would not be

24  misled by truthful information regarding the Product's nutrient content. *Id.* at 11–13.

25        On October 7, 2022, Plaintiff filed the First Amended Complaint, adding Ms. Cassel as an

26  additional plaintiff and further allegations supporting the deception of the Products' labels. *See*

27  ECF No. 35-5 (redlined version of FAC). Defendant filed the instant motion to dismiss the FAC

28  Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
3

on November 8, 2022, and briefing was completed by January 20, 2023. The Court heard oral arguments on April 27, 2023.

## II.     LEGAL STANDARD

### A.     Rule 12(b)(6)

Federal Rule of Civil Procedure 8(a) requires a plaintiff to plead each claim with enough specificity to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (internal quotations omitted). A complaint which falls short of the Rule 8(a) standard may therefore be dismissed if it fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). When deciding whether to grant a motion to dismiss, the Court must accept as true all "well pleaded factual allegations" and determine whether the allegations "plausibly give rise to an entitlement to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009). The Court must also construe the alleged facts in the light most favorable to the plaintiff. *Love v. United States*, 915 F.2d 1242, 1245 (9th Cir. 1989). While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Bell Atl. Corp.*, 550 U.S. at 570).

### B.     Rule 9(b)

Consumer protection claims that sound in fraud are subject to the heightened pleading requirements of Federal Rule of Civil Procedure 9(b). *See Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003); *San Miguel v. HP Inc.*, 317 F. Supp. 3d 1075, 1084 (N.D. Cal. 2018). Rule 9(b) requires that "a party must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The circumstances constituting the fraud must be "specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." *Semegen v. Weidner*, 780 F.2d 727, 731 (9th Cir. 1985). Therefore, a party alleging fraud must set forth "the who, what, when, where, and how" of the misconduct. *Vess*, 317 F.3d at 1106 (quoting *Cooper v. Pickett*, 137 F.3d 616, 627 (9th Cir. 1997)).

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
4

## III. DISCUSSION

The FAC asserts five claims for relief: (1) violations of the CLRA; (2) violations of the FAL; (3) common law fraud, deceit, and/or misrepresentation; (4) violations of the UCL; and (5) unjust enrichment. Plaintiffs seek various damages, restitution, and injunctive relief. Defendant moves to dismiss all claims under Rule 12(b)(6).

### A. UCL "Unlawful" Prong

Defendant argues that Plaintiffs' UCL "unlawful" claim should be dismissed because it is preempted and includes claims that the Court had found lawful in its prior order. Mot. 16–19. Defendant also challenges the "unlawful" UCL claim to the extent it is premised on Plaintiffs' newly alleged violations of the FDA's fortification policy. The Court addresses each in order.

#### 1. Federal Preemption

Although the Court previously held that the original Complaint had sufficiently stated a claim under the UCL's "unlawful" prong based on the Products' violation of certain FDA regulations, Defendant again challenges the sufficiency of this claim. This time, Defendant argues that—because the "unlawful" UCL claim is "derivative" of FDA regulations and only the federal government has exclusive authority to enforce Food, Drug, and Cosmetic Act ("FDCA") regulations—Plaintiffs' state UCL claim is preempted. Mot. 16 (citing *Buckman Co. v. Plaintiffs' Legal Committee*, 531 U.S. 341 (2001) (holding that "state-law fraud-on-the-FDA claims conflict with, and are therefore impliedly pre-empted by, federal law")). Plaintiffs respond by noting that California has expressly incorporated the FDA's regulations as state law under the Sherman Food, Drug, and Cosmetic Law ("Sherman Law"). Opp. 6–9; Cal. Health & Safety Code § 110100(a) ("All food labeling regulations and any amendments to those regulations adopted pursuant to the [FDCA], in effect on January 1, 1993, or adopted on or after that date shall be the food labeling regulations of this state.").

As in the first round of motions to dismiss, Plaintiffs have the stronger argument. Defendant attempts to portray the California Sherman Law as a mirror image reflection of the federal regulations, such that if "the FDA were to remove the regulations on which Plaintiffs rely,

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
5

their claims would fail as a matter of law." Opp. 16–17.  As a result, Defendant argues, Plaintiffs' "unlawful" UCL claim "exist solely by virtue of the FDCA [] requirements," and therefore is impliedly preempted per *Buckman*.  531 U.S. at 353; *but see McClellan v. I-Flow Corp.*, 776 F.3d 1035, 1041 (9th Cir. 2015) (finding no *Buckman* preemption and rejecting suggestion that "any use of federal law to establish a standard of care is an attempt to enforce the underlying federal provisions").  Defendant's characterization, however, is inconsistent with the Sherman Law's statutory language, which purports to create a separate set of state regulations alongside federal regulations.  The Sherman Law states that the FDA's food labeling regulations "shall be the food labeling regulations" of California, but it also permits the California department to "adopt additional food labeling regulations."  Cal. Health & Safety Code § 110100(b).  Additionally, although new FDA regulations (including rescissions) are generally adopted as California regulations as a matter of course, that adoption only occurs thirty days after the federal regulation's implementation and only if there are no substantial objections to the regulation during that interim period; a "timely filing of substantial objections . . . *stays* the adoption of the regulation" in California.  *Id.* § 110115 (emphasis added).  These features of the Sherman Law indicate that it is more than a federal doppelganger and operates as an independent source of state law from the FDCA, thereby avoiding federal preemption under *Buckman*.[1]

In short, Plaintiffs' "unlawful" UCL claim is properly predicated upon violations of California's Sherman Law and, therefore, do not implicate *Buckman*'s preemption holding.

### 2. Claims Addressed in Prior Order

Defendant argues that the Product Chart appended to the FAC contains claims that the Court previously found were not nutrient content claims.  Mot. 18–19; Sept. 7 Order 10–11.  After

---

[1] The Court notes that this conclusion accords with several others from this district that have "routinely reject[ed] the argument that the [Supreme] Court's reasoning in *Buckman* justifies preemption of food labeling claims under the Sherman Law." *Brown v. Van's Int'l Foods, Inc.*, 2022 WL 1471454, at *8 (N.D. Cal. May 10, 2022) (collecting cases).  However, the Court notably parts company with the preemption analysis in *Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090, at *4 (N.D. Cal. Oct. 21, 2022), an opinion that this Court otherwise cites with approval later in this Order.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
6

reviewing all the claims in the Product Chart, the Court finds that the claims for the "Happy Baby Cereal" products ("With iron to support brain development") are not nutrient content claims and conflict with the Court's prior holdings. Product Chart 12; *see* Sept. 7 Order 11 ("Claims about iron are not unlawful."). All other products in the Product Chart include some claim that would qualify as a nutrient content claim. Accordingly, the Court GRANTS Defendant's motion to dismiss the two products under the heading "Happy Baby Cereal" without leave to amend.

### 3.     Fortification Claims

In addition to the FDA's regulations against content claims for children under two, Plaintiffs also allege that certain Defendant's labels violate the FDA's policy against "random fortification of foods." FAC ¶ 39 (citing 21 C.F.R. § 104.20). Here, the labels at issue advertise that certain Products have "+1 1/3 tsp Pea Protein" and "+ super chia." *Id.*; *see also* Opp. 18 n.5. Per the FAC's Product Chart, the only claims that contain a "+" symbol are the "+1 1/3 tsp Pea Protein" claims on "Fiber & Protein" pouches.[2] *See* Product Chart at 6–7.

However, neither Plaintiff is alleged to have purchased the "Fiber & Protein" *pouches*; the FAC only alleges that Ms. Cassel purchased the "Fiber & Protein" *bars*, which do not contain the challenged fortification claim. FAC ¶ 81; *see also* Product Chart at 1–2 (showing claims for the "Fiber & Protein" bars"). In the Ninth Circuit, class plaintiffs may bring claims for products they did not purchase only if the products and misrepresentations are "substantially similar" to those they did purchase. *See, e.g.*, *Corbett v. Pharmacare U.S., Inc.*, 544 F. Supp. 3d 996, 1011 (S.D. Cal. 2021). In its prior order, the Court held that Plaintiffs' purchases of pouches and puff products do not also afford them standing to pursue claims made on bar products. *See* Sept. 7 Order 9. Likewise, the Court now finds that Ms. Cassel's purchase of "Fiber & Protein" bars that do not display any fortification claims are not "substantially similar" to "Fiber & Protein" pouches

---

[2] Plaintiffs' attempt to cast "+ super chia" as an unlawful nutrient fortification claim is unpersuasive. The "+ super chia" claim more closely resembles the addition of an *ingredient*, as opposed to the "random fortification" of a *nutrient*, *e.g.*, a vitamin, mineral, or protein. *See* 21 C.F.R. § 104.20(d)(3) (listing regulated fortification nutrients, which does not include any food ingredients); § 104.20(h) (regulating labels about the "addition of a vitamin, mineral, or protein").

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
7

that *do* contain the challenged fortification claim. Therefore, Plaintiffs do not have standing to pursue their "unlawful" UCL claim based on the FDA's fortification policy.

\* \* \*

Accordingly, the Court finds that Plaintiffs have stated a UCL "unlawful" claim for Products that violate the FDA's regulations on nutrient content claims, and Defendant's motion is once again DENIED in those respects. However, Plaintiffs have not established standing to sue for the "+1 1/3 tsp Pea Protein" alleged fortification claim that neither of them saw or purchased. The motion is, therefore, GRANTED to the extent Plaintiffs seek to bring a UCL "unlawful" claim that those Products violate the FDA's policy against fortification. Because Plaintiffs have not yet had an opportunity to amend their complaint as to fortification claims, the Court will grant Plaintiffs LEAVE TO AMEND on this claim only, with the understanding that any new theories of liability will not be countenanced in an amended complaint.

### B.     Fraud-Based Claims (Claims 1–4)

Both Plaintiffs and Defendant address the CLRA, FAL, UCL, and common law fraud claims collectively, because they all turn on the same theories and allegations of deception from Defendant's labeling. Mot. 4; Opp. 10, 20. The Court will also proceed accordingly.

Claims of consumer deception under California's UCL, FAL, and CLRA statutes are governed by the "reasonable consumer" standard. *McGinity v. Procter & Gamble Co.*, 69 F.4th 1093, 1097 (9th Cir. 2023). Under this standard, plaintiffs must show that "members of the public are likely to be deceived" by advertising that is either false, actually misleading, or "has a capacity, likelihood, or tendency to deceive or confuse the public." *Id.* (citing *Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002)). The "reasonable consumer" standard also contemplates a "probability that a significant portion of the general consuming public or of targeted consumers, acting reasonably in the circumstances, could be misled." *Ebner v. Fresh, Inc.*, 838 F.3d 958, 965 (9th Cir. 2016) (quoting *Lavie v. Procter & Gamble Co.*, 105 Cal. App. 4th 496, 508 (2003)).

#### 1.    Reasonable Consumer

Plaintiffs' core theory of deception appears to be that the Products are misleadingly

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
8

advertised as "providing physical health benefits" when they are actually harmful—both nutritionally and developmentally—for children under two. FAC ¶¶ 44, 69, 100. With respect to the "physical health benefits," the FAC alleges that the Products claim that protein is a "key building block for little growing bodies," fiber "helps support the digestive system," and DHA and choline provides "important nutrients to help support a healthy brain." *Id.* ¶¶ 16–18. As for the nutritional and developmental harms, Plaintiffs provide allegations of the Products' varying levels of added sugars (*id.* ¶¶ 54–57) and the fact that long-term use of pouches could stunt children's motor development and create poor snacking habits (FAC ¶¶ 59–65).

The Court first notes that, although there has been a cornucopia of food labeling decisions from this district, Chief Judge Seeborg recently issued a decision involving nearly identical facts and allegations as the instant case. *See Davidson v. Sprout Foods Inc.*, No. 22-CV-01050-RS, 2022 WL 13801090 (N.D. Cal. Oct. 21, 2022), *appeal filed*, No. 22-16656. The plaintiffs in *Sprout Foods*—represented by the same plaintiffs' counsel in this case—asserted the same theories of fraud that Plaintiffs do here, namely that the defendant's labels "communicate[d] a message that the Products provide physical health benefits for children; and second, that the Products are 'harmful both nutritionally and developmentally.'" *Id.* at *3. The *Sprout Foods* plaintiffs even alleged the same harm, that the baby food products contained "high amounts of free sugars" and that "pouch-based foods may be unhealthy for developing children." *Id.* In concluding that the plaintiffs had failed to plausibly allege harmful effects, Chief Judge Seeborg (1) rejected the allegations of "free sugars" harm because the plaintiffs did not allege "at what point 'high' sugar content crosses into harmful levels"; (2) rejected the allegations of "pouch-based" harm because they relied on "speculative research conclusions and hypothetical scenarios"; and (3) further reasoned that plaintiffs failed to allege that the harms would "outweigh any potential benefits of the Products . . . such that the Products no longer provide any physical health benefits." *Id.* The Court finds the facts in *Sprout Foods* to be strikingly apt and Chief Judge Seeborg's analysis in the "CLRA, FAL, Common Law Fraud, and UCL Fraudulent Practice Claims" section to be persuasive and well-reasoned. 2022 WL 2668481, at *4–6.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
9

For all the reasons outlined in *Sprout Foods*, the Court finds that the near identical facts here also fail to allege that a reasonable consumer could be misled by Defendant's claims.

### a. "Physical Health Benefits"

The Court, however, writes further to emphasize a particular deficiency that Judge Seeborg highlighted, namely the FAC's failure to allege any kind of nexus between the Products' "physical health benefits" representations and the harms stemming from free sugars and pouch usage.

In *Andrade-Heymsfield v. NextFoods*, Judge Moskowitz dismissed a complaint where there was a "mismatch" between plaintiff's alleged harm (excessive amounts of free sugar) and the challenged healthful claims (probiotics and promotion of digestive health). 2022 WL 1772262, at *4–5 (S.D. Cal. Apr. 27, 2022). In so holding, Judge Moskowitz found that "a reasonable consumer would not be misled given that the sugar content is clear, explicit, and otherwise not contrary to the promotion of digestive health promoted on the packaging label." *Id.* at *5.

Here, as well, the Court cannot plausibly infer that a reasonable consumer who is exposed to claims of "3g Protein" and "PROTEIN is a key building block for little growing bodies" (FAC ¶ 16) will be deceived as to the amounts of sugar in the Products or harmful effects of pouch usage. Put differently, even if the Products' sugar content and pouch-related concerns could result in deleterious effects, the FAC does not allege that those effects would vitiate, negate, or even relate to the specific "physical health benefits" conferred by the Products' protein, fiber, or choline content, as claimed. Just because a defendant truthfully advertises one of its product's health benefits does not mean that it has committed fraud or deceived consumers as to all other conceivable unhealthy consequences that were not disclosed.[3] Such a broad proposition would be antithetical to both the heightened pleading standards of Rule 9(b) and the "reasonable consumer" standard in UCL, FAL, and CLRA cases.

### b. "Happy and Healthy Start"

Nor can the Court infer that the more general phrase "Here's to a happy and healthy start!"

---

[3] Plaintiffs do not purport to defend these claims as an omissions-based fraud claim.

would deceive a reasonable consumer into believing the product did not contain free sugars. The Court first clarifies that Plaintiffs disclaim any notion that they are alleging Defendant's Products to be making a "health claim," which is defined as any claim that "characterizes the relationship of any substance to a disease or health-related condition" and are preempted by federal regulations at 21 C.F.R. § 101.14. Opp. 15; *see Clark v. Perfect Bar, LLC*, 816 F. App'x 141, 143 (9th Cir. 2020) (finding that "applicable regulations are silent on whether sugar levels preclude a product from making health claims. . . . Allowing a claim of misbranding under California law based on misleading sugar level content would 'indirectly establish' a sugar labeling requirement 'that is not identical to the federal requirements.'"). Accordingly, the Court will construe Plaintiffs' theories of fraud as challenging the Products only to the extent that their nutrient content claims — not any broader "health claims"—are misleading.

On this point, many courts in this district have rejected theories of fraud where plaintiffs alleged the presence of added sugars rendered a general health-related claim fraudulent. *See, e.g.*, *Yoshida v. Campbell Soup Co.*, 2022 WL 1819528, at *1 (N.D. Cal. May 27, 2022) ("The complaint alleges that the sugars occurring naturally in the fruits and vegetables . . . make label phrases such as 'boost your morning nutrition' and 'healthy greens' deceptive to consumers. . . . **No reasonable consumer would be misled by the challenged phrases** because the actual sugar content is plainly stated on the labels.") (emphasis added); *Truxel v. Gen. Mills Sales, Inc.*, 2019 WL 3940956, at *4 (N.D. Cal. Aug. 13, 2019) ("Defendant is under **no obligation to warn its consumers that certain levels of sugar may be associated with poor health results**. In fact, federal express preemption bars that demand as federal law for the disclosure of sugar content in food imposes no such requirement.") (emphasis added); *Clark v. Perfect Bar, LLC*, 2018 WL 7048788, at *1 (N.D. Cal. Dec. 21, 2018), *aff'd*, 816 F. App'x 141 (9th Cir. 2020) ("Plaintiffs' grievance is that the packaging led them to believe that the bars would be 'healthy' when, in supposed point of fact, the added sugar rendered them unhealthy or, in the alternative, less healthy from what they otherwise had believed. This is untenable. . . **Reasonable purchasers could decide for themselves how healthy or not the sugar content would be**.") (emphasis added).

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
11

1  That said, the Court recognizes that several other courts in this district have reached the opposite

2  conclusion, finding general claims of healthfulness to be misleading where the food product

3  contained excessive sugar. *See LeGrand v. Abbott Lab'ys*, 2023 WL 1819159, at *10 (N.D. Cal.

4  Feb. 8, 2023); *Johnson-Jack v. Health-Ade LLC*, 587 F. Supp. 3d 957, 968 (N.D. Cal. 2022);

5  *Milan v. Clif Bar & Co.*, 2019 WL 3934918, at *2 (N.D. Cal. Aug. 20, 2019); *Krommenhock v.

6  Post Foods, LLC*, 255 F. Supp. 3d 938, 964 (N.D. Cal. 2017).

7      Having considered the conclusions and accompanying facts in above-cited cases, this

8  Court finds the reasoning in *Clark*, *Yoshida*, and *Truxel*—as well as Chief Judge Seeborg's

9  opinion in *Sprout Foods*—to be more persuasive. Accordingly, the Court holds that the mere

10  presence of added sugar in a food product and the potential developmental concerns arising from

11  pouch usage do not render Defendant's claims of a "happy & health start" deceptive to a

12  "reasonable consumer."

13      **2.  FDA Administrative History**

14      Plaintiffs also appear to contend that nutrient content claims would be *per se* misleading,

15  so long as they are on products intended for children under two. Opp. 15. Plaintiffs and their

16  cited case authorities rely almost entirely on the FDA's 1991 commentary for this proposition.

17  FAC ¶ 45; Opp. 12–13. However, after examining the complete administrative record, the Court

18  found that the FDA had since retreated from the excerpts that Plaintiffs rely on, and the regulatory

19  history does not support Plaintiffs' theory of deception.

20      To begin, the quote Plaintiffs rely on originated from the FDA's commentary to a 1991

21  *Proposed* Rule, which reads:

> Similarly, since many consumers have a limited knowledge and understanding of the amounts of nutrients that are recommended for daily consumption, a statement declaring that the product contained a specified amount of a nutrient **could be misleading**. By its very presence, such a statement could give consumers who were unfamiliar with the dietary recommendations the false impression that the product would assist them in maintaining healthy dietary practices relative to the amount of the nutrient consumed when it, in fact, would not.

26  Food Labeling: Nutrient Content Claims, 56 Fed. Reg. 60,421, 60,426 (proposed Nov. 27, 1991)

27  (emphasis added). However, after receiving several comments during the notice-and-comment

28  Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
12

period, the FDA was persuaded to change its position considerably, recognizing instead that nutrient content claims are "generally useful to consumers" and acknowledging that the Proposed Rule would have been "too restrictive":

> These comments have convinced the agency to reconsider the proposed provisions for statements concerning the amount and percentage of nutrients in foods. **The agency believes that statements relating the amount and percentage of nutrients in foods are generally useful to consumers for such purposes as pointing out the level of a nutrient in the food and facilitating comparisons between foods.** The proposed provisions for amount and percentage statements would have limited the use of these statements to only foods that are "low" or "high" in the particular nutrient. **FDA believes that the provisions in the proposal were too restrictive because they would deny consumers the use of such statements to evaluate many foods**.

Food Labeling: Nutrient Content Claims, 58 Fed. Reg. 2302, 2309 (Jan. 6, 1993) (emphasis added). Moreover, the FDA's Final Rule expressly departed from the "complete prohibition of nutrient content claims on foods for infants and children less than 2 years of age," further undermining the support for Plaintiffs' broad legal proposition:

> In response to the comments, FDA has reconsidered the propriety of nutrient content claims on foods specifically intended for infants and children less than 2 years of age. **The agency now believes that the complete prohibition of nutrient content claims on foods for infants and children less than 2 years of age may have been overly broad.** Although current dietary recommendations for Americans do not include infants and children less than 2 years of age, **there is no basis in the 1990 amendments to limit nutrient content claims to only foods intended for the population over the age of 2**.

Food Labeling, 58 Fed. Reg. at 2304.

Plaintiffs' proposition is further eroded by the FDA's express recognition that absolute nutrient claims—*e.g.*, "100 calories," "5 grams of fat," and the claims Plaintiffs challenge here, FAC ¶¶ 16–19—convey "no implied characterization of the level of the nutrient." Food Labeling, 58 Fed. Reg. at 2310. This observation ultimately led the FDA to include a provision in the Final Rule that permitted any nutrient content statement that "does not in any way implicitly characterize the level of the nutrient in the food and [] is not false or misleading in any respect." 21 C.F.R. § 101.13(i)(3). If, as Plaintiffs suggest, the FDA had believed *all* quantitative nutrient claims to be *per se* misleading, it would not have needed to clarify that this safe harbor did not

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
13

extend to "false or misleading" statements. Indeed, if it had shared Plaintiffs' understanding, the FDA would not have carved out a safe harbor for these quantitative nutrient content claims at all.[4]

As the administrative history indicates, Plaintiffs' reliance on the commentary from the FDA's proposed rule is misplaced, at best. Although the FAC and Plaintiffs' opposition represent the FDA's pre-comment positions as the agency's definitive statements and warnings (FAC ¶¶ 45–49), the complete administrative record reflects the agency's retreat from the statements that Plaintiffs rely on. *See* Food Labeling, 58 Fed. Reg. at 2309. To that end, Plaintiffs' attempt to characterize the FDA's pre-comment positions as the agency's support for the *per se* deceptiveness of nutrient content claims is neither persuasive nor well-taken. Accordingly, the Court finds that Plaintiffs' references to 30-year-old excerpts in the FDA's administrative history does not give rise to any inference that nutrient claims are *per se* misleading or deceptive.[5]

* * *

In summary, the Court finds that Plaintiffs' new theory of deception—that the Products claim they will yield "physical health benefit" but may result in harmful effects from added sugar and pouch usage—do not state a claim for fraud under the "reasonable consumer" standard. The Court does not find that a reasonable consumer exposed to the purported "physical health benefit" claims would be deceived as to other attributes of the Products, such as their sugar content or packaging. Accordingly, Plaintiffs' FAL, CLRA, common law fraud, and UCL "fraud" claims are DISMISSED. Because Plaintiffs have already had an opportunity to amend these claims and have been unable to do so successfully, the Court finds that leave to amend would be futile. These dismissals, therefore, shall be WITHOUT LEAVE TO AMEND.

---

[4] It is worth noting that even Judge Chhabria—who had once suggested that any label that includes a prohibited nutrient content claim is per se misleading, *Howard v. Hain Celestial Grp., Inc.*, 2022 WL 11044721, at *3 (N.D. Cal. Oct. 19, 2022)—has since receded from that position. *See Howard v. Gerber Prod. Co.*, 2023 WL 2716583, at *3 (N.D. Cal. Mar. 29, 2023) ("Even relying on the FDA's guidance, it's a step too far to say that a plaintiff can bring a claim sounding in fraud any time a product includes a prohibited nutrient content claim.").

[5] To clarify, the Court is not opining that Defendant's nutrient content claims are compliant with FDA's regulations; Plaintiffs' "unlawful" UCL claim may still proceed based on the Sherman Law violations. The Court merely finds that the FDA's 1991 observations do not support allegations that nutrient content claims on products for children under 2 are misleading, in and of themselves.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
14

### C. UCL "Unfair" Prong

Defendant moves to dismiss Plaintiffs' UCL claim to the extent they assert a claim under the "unfair" prong. Mot. 19–20; FAC ¶¶ 125, 134. The Court previously dismissed the "unfair" UCL claim because Plaintiff did not respond to Defendant's argument to dismiss. Sept. 7 Order 9 n.2. Plaintiffs again marshal no argument against Defendant's motion to dismiss the UCL "unfair" prong, and the Court again GRANTS Defendant's motion, this time WITHOUT LEAVE TO AMEND.

### D. Unjust Enrichment

Defendant moves to dismiss the FAC's unjust enrichment claim but does not assert any independent arguments, only that the claim should be dismissed "to the same extent as the remaining claims." Mot. 24–25. In its earlier order, the Court had denied Defendant's motion to dismiss based on the derivative nature of the argument and the fact that Plaintiff's UCL "unlawful" claim survived. Sept. 7 Order 13–14. This reasoning continues to apply with equal force in the instant motion, where Defendant has not asserted a separate argument to dismiss the unjust enrichment claim and the Court again permitted the UCL "unlawful" prong to proceed.

Accordingly, the Court reaches the same conclusion in the Sept. 7 Order and DENIES Defendant's motion to dismiss the unjust enrichment claim.

### E. Equitable and Injunctive Relief

Finally, Defendant also moves to dismiss Plaintiffs' request for equitable and injunctive relief on the basis that money damages would be an adequate remedy at law. Mot. 20–21. In its prior order, the Court rejected Defendant's arguments regarding equitable relief and injunctive standing. Sept. 7 Order 14. Specifically, the Court found that, because Plaintiff's claims for damages were inadequately pled and dismissed, "Defendant's arguments concerning the availability of legal remedies under the CLRA and common law fraud claims [were] moot." *Id.* To the extent Defendant's prior arguments are raised here, the Court again finds them to be moot.

Defendant, however, also contends for the first time that Plaintiffs have failed to plausibly allege that they would likely purchase the Products again in the future because (1) health-

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
15

conscious consumers would not buy purportedly "harmful" products just because they were relabeled; (2) Plaintiffs are now on notice of the Products' composition and cannot claim that they would be deceived again; and (3) Plaintiffs' children have aged out of the age group for the Products. Mot. 21–24.

Defendant's first argument asks the Court to directly disbelieve the FAC's allegations regarding Plaintiffs' intent to purchase the Products again in the future if they were properly labeled. FAC ¶¶ 80, 86. This contravenes the standard for Rule 12(b)(6) motions for which the Court must accept as true all well-pleaded factual allegations, *see, e.g.*, *Ashcroft v. Iqbal*, 556 U.S. at 679, and the Court declines Defendant's invitation to do so otherwise. Defendant's second theory—that Plaintiffs cannot be deceived in the future because they are now on notice—has been squarely rejected by the Ninth Circuit's decision in *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 969 (9th Cir. 2018) ("We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, *even though the consumer now knows or suspects that the advertising was false at the time of the original purchase*.") (emphasis added). And finally, with respect to Defendant's third argument, Plaintiffs' alleged intentions to purchase the Products sufficiently allege a concrete and particularized risk of future informational injury. *Cf. id.* at 971 ("[The Ninth Circuit] recognizes a history of lawsuits based on similar informational injuries."). To the extent Defendant asserts that Plaintiffs' children have aged out of the Products' "children under 2" age group during the course of this litigation, such an argument would appear to run afoul of the "capable of repetition, yet evading review" exception to mootness. *See, e.g.*, *Fed. Election Comm'n v. Wisconsin Right To Life, Inc.*, 551 U.S. 449, 462 (2007) ("The exception applies where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'").

In sum, Defendant's arguments to dismiss the FAC's requests for equitable and injunctive relief are unavailing. The Court DENIES Defendant's motion to the extent it seeks to dismiss the FAC's request for injunctive relief arising from the UCL "unlawful" claim.

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
16

## IV. CONCLUSION

Based on the foregoing, Defendant's motion is GRANTED IN PART and DENIED IN PART, as follows:

1. The First, Second, and Third Claims are DISMISSED WITHOUT LEAVE TO AMEND;
2. The Fourth Claim is DISMISSED WITHOUT LEAVE TO AMEND as to the UCL "fraudulent" and "unfair" prongs;
3. Defendant's motion is DENIED IN PART as to the Fourth Claim, to the extent it alleges a claim under the UCL "unlawful" prong based on Sherman Law violations;
4. The Fourth Claim is DISMISSED WITH LEAVE TO AMEND to the extent it alleges a UCL "unlawful" claim premised on the FDA's fortification policy and DISMISSED WITHOUT LEAVE TO AMEND as to the Products listed in Section III.A.2 above;
5. Defendant's motion is DENIED as to the Fifth Claim.

Any amendments to the FAC shall be filed within twenty-one (21) days of this Order.

**IT IS SO ORDERED.**

Dated: September 29, 2023

EDWARD J. DAVILA
United States District Judge

Case No.: 5:21-cv-08566-EJD
ORDER GRANTING IN PART AND DENYING IN PART MOTION TO DISMISS
17